ROCKWOOD LEE McKEE, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 26675

May 30, 1996                                                917 P.2d 940

[Rehearing denied December 18, 1996]

*James J. Jackson*, Public Defender, *James P. Logan*, Deputy Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa*, Attorney General, Carson City; *R. Michael McCormick*, District Attorney, *Conrad Hafen*, Chief Deputy District Attorney, Humboldt County, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment of conviction of one count of possession of a controlled substance, and one count of trafficking in a controlled substance-level III. On appeal, appellant Rockwood Lee McKee (McKee) contends that the evidence discovered during the search of the vehicle he was driving should be suppressed since the search was conducted without probable cause, and that he is entitled to a new trial since the prosecutor engaged in misconduct. We hold that McKee lacks standing to challenge the validity of the search. We also hold that the prosecutor engaged in misconduct that materially prejudiced McKee's defense. We therefore reverse the district court's judgment of conviction, and remand the matter to the district court.

### THE FACTS

In July 1994, McKee was living in Las Vegas, Nevada, where he worked as a carpenter. Prior to moving to Las Vegas, McKee lived in Southern California. While in Southern California, McKee performed several carpentry jobs for Verna Lovely (Lovely). On July 10, 1994, Lovely called McKee and asked him to drive her to Boise, Idaho, so that she could visit a friend. In return for his efforts, Lovely offered to fly McKee to Los Angeles and give him enough money to fix his truck. McKee agreed, and flew to Los Angeles.

After arriving in Los Angeles, McKee made some repairs to Lovely's vehicle. Because it was getting late, McKee purchased some methamphetamine to help him stay awake during the trip. McKee hid the drug in his sock. At about 1:00 a.m. on July 13, 1994, the couple began their trip. When they arrived in Truckee, California, some minor repairs were made to the car, and Lovely began driving. However, Lovely became fatigued before they arrived in Reno, so McKee took over the driving. Later that day, at about 9:00 p.m., Nevada Highway Patrol Trooper Charles Stamey (Stamey) observed Lovely's car traveling at a high rate of

speed near Winnemucca, Nevada. After Stamey stopped the car, the couple informed the trooper that Lovely was the owner of the vehicle. Even though McKee was driving, Stamey asked to see Lovely's license and registration. As she was looking for her license, Stamey observed a telephone pager, a cellular telephone, a large road atlas, a pit bull dog in the back seat, the smell of air freshener, and a two-inch hole in the passenger side door.

Lovely could not find her license, so Stamey asked if she had any other identification. Lovely got out of the car, opened the rear hatchback, and began looking for her checkbook. Stamey observed that the car alarm went off as Lovely opened the hatchback. He also noticed a twelve-by-six-inch hole in the rear quarter panel, apparently designed by the manufacturer to allow access to the brake lights. After Lovely found her checkbook, she returned to the cab of the car and began looking for her registration in the glove box. Stamey observed a wallet in the glove box that appeared to contain a large amount of money.

As Lovely was looking for the registration, Stamey asked McKee for his license. Stamey returned to his patrol vehicle to prepare a citation when he noticed that McKee's license was expired. Growing ever more suspicious, Stamey returned to Lovely's car and asked McKee about the details of the trip. McKee told him that he and Lovely left Los Angeles about 1:00 a.m. and were travelling to Boise to meet a friend, that McKee began driving the vehicle near Lovelock, and that he and Lovely planned to return to Los Angeles the next day. Stamey then began questioning Lovely. She told him that she and McKee left Los Angeles about 5:00 a.m., that McKee began driving the vehicle near Lake Tahoe, and that they planned to stay in Boise for about a week. Stamey returned to his vehicle and requested a criminal history on McKee. Stamey was informed that McKee had a history of weapons and narcotics violations.

Stamey returned to Lovely's vehicle and asked McKee if he had any large amounts of currency or any drugs either on his person or in the car. McKee told him "no" and that the only thing that belonged to him was a bag in the back. Stamey asked to search the bag. McKee refused. Stamey asked McKee if he could search the car. McKee told him that he did not own the car and that Stamey would have to ask Lovely. Stamey asked Lovely if he could search the car. Lovely refused. While these events were taking place, Stamey noticed that Lovely was acting as though she was very nervous.

Concluding that he had probable cause, Trooper Stamey conducted a search of the car. Stamey's search produced the following: a loaded nine millimeter semi-automatic pistol; a brown bag containing 451.27 grams of methamphetamine; a salt container

with a false bottom in which Stamey found a baggy containing methamphetamine; a set of scales capable of weighing up to 1,000 grams; a white envelope containing 4.8 grams of marijuana; and a pink paper bag containing three grams of methamphetamine. Stamey arrested McKee and Lovely. While searching McKee's person, Stamey found a baggy containing 0.83 grams of methamphetamine in McKee's sock.

A jury trial was held on September 21, 22, and 23, 1994, after which a jury found McKee guilty of trafficking in a controlled substance-level III, and possession of a controlled substance. On January 11, 1995, the district court sentenced McKee to serve twenty-five years in the Nevada State Prison and to pay a $500,000.00 fine for trafficking in a controlled substance-level III, and to serve four years in the Nevada State Prison for possession of a controlled substance. On January 27, 1995, McKee filed a timely notice of appeal.

## THE SEARCH

In Rakas v. Illinois, 439 U.S. 128, 148 (1978), the Supreme Court held that a passenger in a car who fails to assert a property or a possessory interest in the automobile or the property seized lacks standing to assert that his Fourth Amendment rights have been violated. However, in Scott v. State, 110 Nev. 622, 628, 877 P.2d 503, 507 (1994), we recognized that a non-owner driver or passenger who can show lawful possession of a car may have standing to challenge a search. But, when the owner of the vehicle is present in the vehicle, at least one federal court has found that the non-owner driver lacks standing. In United States v. Jefferson, 925 F.2d 1242 (10th Cir. 1991), Jefferson, his brother, and Tillis were driving in Tillis' car when the car was pulled over and searched. Drugs were found, and Jefferson was charged with possession. Jefferson argued that the drugs should be suppressed, since the officer did not have probable cause to search the vehicle and since Jefferson was driving the car when it was stopped. The Tenth Circuit Court of Appeals concluded that because Tillis, who was present in the car, did not transfer a possessory interest in the vehicle to Jefferson, Jefferson was without standing to challenge the validity of the search. *Id.* at 1251.

Like Jefferson, McKee was driving a car while the owner (Lovely) was riding as a passenger. Since Lovely did not give up possession of the vehicle to McKee, McKee did not have a reasonable expectation of privacy in the vehicle. Accordingly, we conclude that McKee lacked standing to object to Stamey's search.

## THE IMPEACHMENT

In the course of cross-examining McKee, the prosecution asked McKee if he had used drugs on July 12, 1994. McKee answered, "[N]o." The prosecution then produced a photograph of McKee, dated July 12, 1994, in which McKee was shown holding a straw and a baggy in his right hand. McKee then admitted that he had used drugs on July 12, 1994. McKee's counsel objected to the use of the photograph.

It is error to allow the State to impeach a defendant's credibility with extrinsic evidence relating to a collateral matter. *See* NRS 50.085(3)[1]; Rembert v. State, 104 Nev. 680, 766 P.2d 890 (1988); Moore v. State, 96 Nev. 220, 607 P.2d 105 (1980). In Rowbottom v. State, 105 Nev. 472, 779 P.2d 934 (1989), Rowbottom was charged with first-degree murder. At one point, Rowbottom testified to the close relationship he had with his sisters. On cross-examination, the prosecution inquired into his relationship with his sisters. Rowbottom's mother was then called as a witness. During the prosecution's cross-examination of the mother, the mother testified about Rowbottom's past sexual misconduct with his sisters. In concluding that this impeachment was improper, we stated:

> Had the prosecution wished to rebut [Rowbottom's] testimony and impeach Rowbottom's credibility with specific instances of conduct it could have done so by inquiring about Rowbottom's alleged prior misconduct during *his* cross-examination. NRS 50.085(3) [sic]. If Rowbottom denied having committed the act, the prosecution could not, however, prove specific instances of conduct by extrinsic evidence, *i.e.*, Rowbottom's mother's testimony.

*Id.* at 485, 779 P.2d at 942 (citations omitted).

In the instant case, the district court erred in allowing the prosecutor to impeach McKee with the photograph. Initially, we conclude that whether McKee was using methamphetamine on

[1] NRS 50.085(3) states:

Specific instances of conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime, may not be proved by extrinsic evidence. They may, however, if relevant to truthfulness, be inquired into on cross-examination of the witness himself or on cross-examination of a witness who testifies to an opinion of his character for truthfulness or untruthfulness, subject to the general limitations upon relevant evidence and the limitations upon interrogations and subject to the provisions of NRS 50.090.

July 12, 1994, several days before his arrest, is an issue collateral to whether he was trafficking in a controlled substance on the night in question. Impeachment on a collateral matter is clearly not allowed. In addition, the photograph used to impeach McKee's testimony is extrinsic evidence. As we noted in *Rowbottom,* under NRS 50.085(3), the prosecution is allowed to inquire into specific instances of conduct on cross-examination, but must accept the witness' answer. The prosecution is not allowed to prove up the conduct through extrinsic evidence. Unfortunately, that is exactly what happened here. The prosecution asked McKee if he used drugs on July 12, 1994, McKee said, "[N]o"; then the prosecution proved through extrinsic evidence that he did. In so doing, the prosecutor violated the rules of impeachment under NRS 50.085(3).

## THE OPEN FILE POLICY

The district attorney's office of Humboldt County has an open file policy. Several days before trial was to begin, the police discovered a camera in Lovely's vehicle. The film was developed and a picture, dated July 12, 1994, showing McKee in possession of drugs, was produced. However, because the prosecution was not going to use the picture in its case-in-chief, and because the picture was inculpatory rather than exculpatory, the prosecution decided not to place the picture in the file. Instead, the prosecution withheld the picture in the hope that McKee would testify. McKee did, and the prosecution used the picture to impeach him.

Prosecutors are put in the precarious position of having to pursue criminal convictions zealously, while at the same time, insure that defendants receive a fair and impartial trial. As was stated in Bruno v. Rushen, 721 F.2d 1193, 1195 (9th Cir. 1983):

> Even more egregious, however, are attempts by representatives of the government to resort to these reprehensible means to shortcut their responsibility to ferret out all admissible evidence and use only that to meet their burden of proof. We fear resort to such conduct indicates either an absence of sufficient evidence to convict or reflects shoddy government efforts that have failed to unearth admissible evidence. . . . He has no obligation to win at all costs and serves no higher purpose by so attempting. Indeed, "[i]t is as much a duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." [Berger v. United States, 295 U.S. 78, 88 (1934).]

*See also* Citti v. State, 107 Nev. 89, 807 P.2d 724 (1991) (State is held to the most meticulous standards of both promise and performance); Perry v. State, 106 Nev. 436, 794 P.2d 723 (1990) (reasonable expectations of the parties should be honored); Wolf v. State, 106 Nev. 426, 794 P.2d 721 (1990) (case remanded for new sentencing hearing because prosecutor violated the letter and spirit of plea agreement); State v. Smith, 105 Nev. 293, 774 P.2d 1037 (1989) (when a plea rests on a promise or agreement of the prosecutor, such promise must be fulfilled).

We conclude that these cases stand for the proposition that a prosecutor, as the agent of the State, is held to a high ethical standard and must abide by the promises he makes. Here, McKee relied on the open file policy of the Humboldt County District Attorney's Office. Though the boundaries of that policy do not appear to be defined, the record shows that McKee's counsel believed that the open file policy meant that the District Attorney's Office would make available all relevant inculpatory, as well as, exculpatory evidence. We conclude that it was reasonable for McKee to believe that the District Attorney's Office would make available all relevant evidence. Moreover, the record seems to indicate that the prosecutor knew McKee was relying on this policy when he (the prosecutor) chose to withhold the photograph. Because the photo was never placed in the file, McKee had no reason to believe such incriminating evidence existed. We hold that this act of deception was clearly unfair, and extremely prejudicial to McKee's defense.[2]

## CONCLUSION

Even though Trooper Stamey's search of Lovely's vehicle was proper and the evidence discovered during that search is admissible against McKee, we cannot overlook the fact that the prosecution engaged in several acts of misconduct that are clearly prejudicial to McKee; and we hold that the acts in question cannot be considered harmless. *See* NRS 178.598. The district court's judgment of conviction is hereby reversed, and the case is remanded to the district court for a new trial.

---

[2]In his closing argument, the prosecutor stated, "Defense counsel stated that the State is assuming quite a bit. I believe that defense counsel is assuming his client was telling the truth. Clearly, he hasn't. Why should we believe him today?" In emphasizing McKee's lack of credibility, the prosecutor focused the jury's attention on improper impeachment evidence. This emphasis compounded an already extremely prejudicial mistake.