OPINION

Per Curiam:

On appeal from a judgment of conviction of first degree murder and robbery, Harold Furbay argues that (1) his right to a speedy trial was violated, (2) his motion for self-representation was improperly denied, (3) there was insufficient evidence to convict him of murder and robbery, and (4) he was denied a fair penalty hearing. We reject Furbay’s contentions and affirm his conviction and sentence.
In late 1991, Furbay met Max Combs at a truck stop in El Paso, Texas. Combs allowed Furbay to join him as he journeyed to Elko, Nevada. Their trip was interrupted when a Lake Mead park ranger impounded Combs’ vehicle. Combs did not have sufficient funds to redeem his vehicle, so Furbay searched for employment in Las Vegas.
Furbay began assisting Walter Jerry Mitchell with his pony ride business. Two weeks later, Furbay brought a man matching Mitchell’s description to Combs’ hotel. They arrived in a vehicle matching the description of Mitchell’s pickup truck. Two weeks after that, Furbay arrived at Combs’ hotel with the truck but without Mitchell. Furbay indicated that Mitchell was out of town and had permitted him to use the vehicle. Mitchell’s television and other personal items were in the back of the truck. Furbay and Combs decided to continue their journey to Elko in Mitchell’s truck. In Elko, Furbay tried to pawn some items, but was turned away for inadequate identification. Combs sold a silver and turquoise ring at a jewelry and loan establishment. Combs later revealed to police that Furbay sold a television and VCR in Las Vegas before leaving for Elko. After arriving in Elko, Furbay and Combs parted ways.
Mitchell’s body was found in Las Vegas on January 11, 1992. Mitchell had been killed by blunt trauma to the head and strangulation. In the aftermath of Mitchell’s death, Mitchell’s wife, who did not live with him, discovered a bill for telephone calls to *484 Baltimore, Maryland, placed on January 9 and 10, 1992. Many of Mitchell’s personal items, including silver and turquoise jewelry, a television, and a VCR, were also missing from his home.
Back in Elko, Furbay met Ricky Loftis from Moab, Utah. Furbay introduced himself as Jerry Mitchell. Loftis recently drove to Elko, but he was out of gas and money. Furbay asked Loftis to pawn some of Mitchell’s items, but Loftis was turned away for lack of identification. Loftis later sold a silver and turquoise watch in a parking lot, and a hitchhiker agreed to pawn other items. After Loftis sold his truck, the two agreed to travel to Moab in Mitchell’s truck. Before leaving, Furbay switched the license plates on Mitchell’s truck with those on Loftis’ truck.
During the trip to Moab, Loftis became suspicious of Furbay and decided to notify the police. After both were arrested, the police found an identification card for Jerry Mitchell in Furbay’s wallet. After further investigation, Furbay’s fingerprints were found in Mitchell’s home. The police also discovered that the phone calls to Maryland were to Furbay’s sister and a friend.
Following a jury trial beginning on October 20, 1997, Furbay was found guilty of first degree murder and robbery.

Right to a speedy trial

Furbay argues that his right to a speedy trial was violated because his jury trial did not occur until five and one-half years after his arrest in 1992.
In Nevada, a defendant has a statutory right to a trial within 60 days after arraignment. See NRS 178.556(2). However, a defendant can waive this statutory right and such a waiver can be expressed by counsel. See Schultz v. State, 91 Nev. 290, 292, 535 P.2d 166, 167 (1975). In this case, Furbay’s counsel waived application of the 60-day rule at Furbay’s arraignment.
A defendant’s fundamental constitutional right to a speedy trial was decided in Barker v. Wingo, 407 U.S. 514, 515 (1972). In Barker, the U.S. Supreme Court stated that there is no fixed time that indicates when the right to a speedy trial has been violated; thus, the right is assessed in relation to the circumstances of each case. See id. at 521. The prosecution, however, must discharge its “constitutional duty to make a diligent, good-faith effort to bring [the defendant to trial].” Moore v. Arizona, 414 U.S. 25, 26 (1973) (citations omitted). When determining whether the right to a speedy trial was violated, four factors should be considered: (1) length of delay; (2) the reason for the delay; (3) the defendant’s *485 assertion of his right; and (4) prejudice to the defendant. See Barker, 407 U.S. at 530.
During the intervening five and one-half years between Furbay’s arrest and his jury trial, his trial was continued nine separate times. While Furbay invoked his speedy trial rights in open court, the second factor of the Barker analysis weighs overwhelmingly in favor of the prosecution. Defense counsel requested five of the trial continuances. Two other trial dates were continued because the parties entered into plea negotiations which failed. Another trial date was continued for good cause because the prosecution could not locate a witness. And another trial date was continued because the prosecutor wished to attend a seminar. Thus, all but one of the continuances were for good cause or were occasioned by defense motions or tactics. See, e.g., Barker, 407 U.S. at 530. We conclude that the two-month postponement for the prosecutor’s seminar attendance was unacceptable delay; however, this is the only unacceptable delay in the five-and-one-half year period, and therefore, we hold there was no infringement of Furbay’s constitutional speedy trial right. There was no evidence that the actions of the prosecution prejudiced Furbay.

Right to self-representation

A defendant has a constitutional right to personally make his defense. See Faretta v. California, 422 U.S. 806, 819 (1975). To determine whether a defendant can represent himself, courts conduct a two-part inquiry. First, the defendant must be competent to waive his right to assistance of counsel. See Godinez v. Moran, 509 U.S. 389, 399 (1993). Second, when an accused relinquishes his right to counsel, he must do so “knowingly and intelligently.” Faretta, 422 U.S. at 835. An accused’s “technical legal knowledge, as such, is not relevant to an assessment of his knowing exercise of the right to defend himself.” Id. at 836.
By August 1994, Furbay had filed three motions to dismiss counsel as ineffective—all of which were denied. Furbay filed a motion to represent himself when the court refused to appoint other counsel. This motion was also denied. The record indicates that Furbay was aware of the dangers of proceeding without counsel at trial. However, it is unclear whether Furbay was aware that the prosecution was seeking the death penalty. Although the prosecution filed a notice to seek the death penalty, the record does not show that Furbay understood that the prosecution could seek
*486 the death penalty. The district court’s decision to deny Furbay’s motion for self-representation was significantly based on the district court’s determination that Furbay was not aware that he might face the death penalty if convicted. We need not determine whether Furbay was unconstitutionally denied the right to represent himself. In March 1997, the district court gave Furbay an opportunity to revisit the previous decision regarding Furbay’s motion for self-representation. Furbay rejected the opportunity and waived his right to self-representation.

Sufficiency of the evidence

A jury conviction will stand where the record reveals substantial evidence that reasonably supports a finding of guilt beyond a reasonable doubt. See Doyle v. State, 112 Nev. 879, 891, 921 P. 2d 901, 910 (1996). Upon appellate review, all of the evidence is to be considered in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 318 (1979). It is the jury’s function, not that of the appellate court, to assess the weight of the evidence and determine the credibility of witnesses. See Doyle, 112 Nev. at 891-92, 921 P.2d at 910.
Furbay alleges that because none of Mitchell’s stolen property was presented at trial there was insufficient evidence to find him guilty. NRS 200.380(1) defines robbery as:
[T]he unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery.
The act of violence in this case was the murder of Mitchell. It does not matter whether the intent to rob was conceived before or after the act of violence. See Leonard v. State, 114 Nev. 1196, 1210, 969 P.2d 288, 296 (1998). Furbay was in possession of Mitchell’s pickup truck, television, and other items, including jewelry, when he picked up Combs in Las Vegas. Testimony at trial indicated that the television and the other items, which Furbay tried to pawn or had others pawn, were Mitchell’s. When Furbay was arrested, he was still in possession of Mitchell’s truck. When the evidence is viewed in the light most favorable to the prosecution, there is sufficient evidence to convict Furbay of robbery.
*487 There was also sufficient evidence to convict Furbay of murder in the first degree.[1] Trial testimony revealed that Furbay worked for Mitchell and was one of the last persons seen with the deceased. Combs indicated that he saw Furbay with an individual matching Mitchell’s description shortly before the commission of the crime. The fact that Furbay was in possession of Mitchell’s property is evidence that Furbay committed the murder in perpetration of a robbery which is sufficient evidence to constitute first degree murder under NRS 200.030(l)(b). Again, when the evidence is viewed in the light most favorable to the prosecution, there is sufficient evidence to find Furbay guilty of first degree murder.

Penalty hearing

At sentencing, the prosecution presented an Alabama police investigator who revealed information about murder charges against Furbay in Alabama. The investigator also testified about an altercation that Furbay had with a previous employer. Furbay now contends that he did not receive a fair trial because the prosecution did not produce all of the investigator’s reports prior to the hearing.
The prosecutor is under no general duty to provide inculpatory, as opposed to exculpatory, evidence to the defense. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (discussing exculpatory evidence); Rivera v. State, 808 S.W.2d 80, 95 (Tex. Crim. App. 1991) (discussing inculpatory evidence). Furbay incorrectly argues that McKee v. State, 112 Nev. 642, 647-48, 917 P.2d 940, 943-44 (1996) supports his contention. In McKee, this court held that the prosecution deliberately withheld inculpatory evidence in its possession and control despite professing to have an open file policy. This court concluded that the prosecution is held to a high ethical standard and must abide by the promises it makes. When the prosecution purports to give all inculpatory evidence in its control, it may not withhold evidence for later use. See id. at 648, 917 P.2d at 944. The case at bar does not involve a prosecutor’s *488 promise to provide all evidence in its possession to the defense. Furbay’s rights were not violated, and he is not entitled to a new hearing.
Therefore, we affirm Furbay’s conviction and sentence.

NRS 200.030(1) defines murder in the first degree as:
(a) Perpetrated by means of poison, lying in wait, torture or child abuse, or by any other kind of willful, deliberate and premeditated killing;
(b) Committed in the perpetration or attempted perpetration of . . . robbery, burglary, ... or
(c) Committed to avoid or prevent the lawful arrest of any person by a peace officer or to effect the escape of any person from legal custody.