# IN THE SUPREME COURT OF THE STATE OF NEVADA

FREDDIE ROMERO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 67731

FILED

JUN 1 0 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This an appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit robbery and robbery, victim 60 years or older. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

This case arises from an incident wherein appellant Freddie Romero and nonparty Jimmy Betancourt took eighty-five-year-old Sonia Kidd's purse. The State charged Romero with (1) conspiracy to commit robbery; (2) battery with intent to commit robbery; (3) battery resulting in substantial bodily harm, victim 60 years of age or older; and (4) robbery, victim 60 years of age or older. The jury found Romero guilty of conspiracy to commit robbery and robbery, victim 60 years of age or older.

Romero now appeals, arguing that (1) the district court presented several erroneous jury instructions; (2) insufficient evidence supports the jury's verdict; (3) several of his constitutional rights were violated, including his confrontation, speedy trial, and due process rights; (4) the district court erred in denying his juror challenges for cause; and (5) cumulative error warrants reversal.

16-18239

We hold that the district court erred when it instructed the jury that the prosecution must prove every "material element" of the crimes charged beyond a reasonable doubt. In addition, the district court erred in denying Romero's juror challenges for cause. However, Romero has failed to demonstrate any prejudice resulted from these errors. Therefore, we affirm the judgment of the conviction.

*Jury Instructions*

Romero contends that Jury Instructions No. 5, 6, 14, and 40 inappropriately lowered the State's burden of proof, and that Jury Instruction No. 3 omitted the words "Clark County, Nevada," such that the jury never found where the crime took place. With the exception of Jury Instruction No. 5, we discern no error in these instructions.

Romero did not object to any of the jury instructions now challenged. Therefore, we review these arguments for plain error. *Saletta v. State*, 127 Nev. 416, 421, 254 P.3d 111, 114 (2011). To constitute plain error, "the error must be clear under current law." *Id.* (internal quotation marks omitted). Furthermore, plain error does not require reversal unless the defendant demonstrates that the error affected his substantial rights through actual prejudice or a miscarriage of justice. *Id.*

Jury Instruction No. 5 declares that "the State [has] the burden of proving beyond a reasonable doubt every material element of the crime charged." In *Burnside v. State*, we concluded that such an instruction, although unnecessary because the State must prove *every element* of the crimes charged beyond a reasonable doubt, was "not so misleading or confusing as to warrant reversal." 131 Nev., Adv. Op. 40, 352 P.3d 627, 638 (2015). We stated that the phrase "material element" "should be omitted from future instructions." *Id.*

We acknowledge that Jury Instruction No. 5 was given before *Burnside* was decided. Nonetheless, the error need only be plain at the time of appellate consideration. *See Henderson v. United States*, ___ U.S. ___, ___, 133 S. Ct. 1121, 1127 (2013) (holding that errors under FRCP 52(b)—from which Nevada's plain error statute, NRS 178.602, is derived—must be plain upon appellate consideration). Therefore, it is clear under current law that use of the phrase "material element" is erroneous. However, we conclude that its prejudicial effect was limited, because "the instructions as a whole . . . sufficiently conveyed to the jury that the State had the burden of proving beyond a reasonable doubt each element of the charged offenses. . . ." *Burnside*, 131 Nev., Adv. Op. 40, 352 P.3d at 638. Therefore, we are not convinced this error resulted in actual prejudice or a miscarriage of justice.

Jury Instruction No. 14 reads "[w]henever there is *slight evidence* that a conspiracy existed, and that the defendant was [a] member[ ] of the conspiracy, then the statements [of another member] may be considered by the jury as evidence . . . as to the defendant." (emphasis added). In *Burnside*, we addressed an identical jury instruction and held that the instruction "solely addresses the jury's consideration of a coconspirator's statements in furtherance of a conspiracy as evidence against another member of the conspiracy" and "does not suggest that [the defendant] may be convicted of conspiracy or a conspiracy theory of liability based on slight evidence instead of the constitutionally required beyond-a-reasonable-doubt standard." *Id.* at 644. Therefore, Romero has failed to demonstrate plain error.

Jury Instruction No. 6 states that the jurors "are [there] to determine the guilt or innocence of the Defendants." Although this

sentence does not include the applicable evidentiary standard, this same instruction clarifies that "if the evidence in the case convinces you *beyond a reasonable doubt* of the guilt . . . of the Defendant[ ], you should so find." We hold such an instruction does not impermissibly lower the State's burden of proof, and Romero has failed to demonstrate plain error.

Jury Instruction No. 40 states that it is each juror's duty "to be governed in [his or her] deliberation by the evidence . . . and by the law . . . with the sole, fixed and steadfast purpose of doing equal and exact justice between the Defendant and the State of Nevada." Romero asserts that it is the prosecutor's duty—not the jury's—to seek justice, and that this instruction should have instructed the jury on its duty to determine if the State proved the elements of the crime beyond a reasonable doubt.

We hold that the instructions, as a whole, sufficiently conveyed to the jury that it had a duty to determine whether the defendant was guilty of the crimes charged beyond a reasonable doubt. Jury Instructions No. 1 and 2 directed the jury to follow the instructions and to consider the instructions as a whole, each in regard to all others. Jury Instructions No. 3, 6, and 37 informed the jury that it had a duty to determine whether the defendant was guilty. Lastly, Jury Instructions No. 5, 6, 23, 29, and 34 reiterated that the jury must be convinced of the defendant's guilt beyond a reasonable doubt in order to find him guilty. In this context, Jury Instruction No. 40 did not impermissibly alter the jury's duty, nor did it diminish the State's burden of proof. Therefore, Romero has failed to demonstrate plain error.

Finally, Jury Instruction No. 3 described the charges against Romero. Romero contends that this instruction was erroneous because it omitted the phrase "Clark County, Nevada," such that the jury never

found where the crime took place. We decline to address the merits of this argument. Not only did Romero fail to object to this instruction, but Romero never disputed, either below or on appeal, where the crimes occurred. *See Saletta*, 127 Nev. at 421, 254 P.3d at 114 (noting that unpreserved error may frustrate appellate review).

*Sufficiency of Evidence*

Romero argues that there is insufficient evidence that he used force or violence to obtain Kidd's purse, especially in light of the fact that Detective Michael Sclimenti reminded Kidd in a pretrial interview that two men had taken her purse. We disagree.

In reviewing this argument, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) (internal quotation marks omitted) (emphasis in original). Furthermore, "[i]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." *Id.* (internal quotation marks omitted).

Portions of Romero's audio confession were played at trial, in which Romero admitted that (1) he targeted Kidd because she was the "easiest target" and she was "walking really slow," (2) he grabbed the purse and fled, and (3) he dropped the purse while effectuating his escape. In addition, video shows that Kidd carried her purse on her left forearm. Given that Kidd was walking normally with her purse over her left forearm until Romero attempted to take her purse, a strong implication can be drawn that force was used to obtain the purse. Furthermore, other evidence also suggests that Kidd was forced to the ground in some

manner, including: Kidd's testimony that she was pushed; Austin Flores's testimony that a "big force" caused her to fall, as her "whole body [was] in the air"; and Krista Gibb's testimony that Kidd told her at the scene that someone had "knocked [her] down."

Although there may have been reasons to question Kidd's recollection of the event, it is the jury's job to "determine the credibility of witnesses." *Origel-Candido*, 114 Nev. at 381, 956 P.2d at 1380. After viewing the evidence in the light most favorable to the State, we hold that a rational jury could have found that Romero used force or violence to obtain Kidd's purse beyond a reasonable doubt.

*Confrontation Right*

Romero argues that his Sixth Amendment right to confront the witnesses against him was violated when (1) a portion of Betancourt's audio confession was played for the jury; (2) eyewitness Matthew Dunn testified that Betancourt admitted to taking an old lady's purse; and (3) Officer James LaRosa testified that Betancourt admitted he was present when Kidd was "at least thrown to the ground, grabbed or her purse [was] taken[.]" We disagree.

Romero never objected to these statements at trial. Therefore, we review these arguments for plain error. *See Martinorellan v. State*, 131 Nev., Adv. Op. 6, 343 P.3d 590, 593 (2015) (holding "all unpreserved errors are to be reviewed for plain error without regard as to whether they are of constitutional dimension").

The United States Supreme Court has held that in a joint trial, the Confrontation Clause of the Sixth Amendment is violated if a non-testifying codefendant makes a confession that incriminates the defendant. *Bruton v. United States*, 391 U.S. 123, 135-37 (1968). After

reviewing the challenged statements, we hold that Romero's confrontation rights were not violated. Although Betancourt's statements can be understood as implicitly suggesting a second person was involved—as he admitted that he was present when Kidd's purse was taken, but he did not admit to taking the purse—none of the challenged statements identify or implicate Romero. Indeed, it was Romero's confession and his identification from two witnesses that incriminated him specifically, not Betancourt's statements. Therefore, we conclude Romero's Sixth Amendment right to confront the witnesses against him was not violated.

*Speedy Trial Rights*

Romero contends that his statutory and constitutional speedy trial rights were violated when the district court continued his trial twice. We disagree.

Under NRS 178.556(1), a district court may dismiss a case if the "defendant . . . is not brought to trial within 60 days after the arraignment on the . . . information." This court has stated that the "60-day rule . . . has flexibility," *Adams v. Sheriff, White Pine Cty.*, 91 Nev. 575, 575-76, 540 P.2d 118, 119 (1975) (internal quotation marks omitted), and that a district court has discretion in deciding whether to dismiss an information pursuant to NRS 178.556, *Browning v. State*, 104 Nev. 269, 271, 757 P.2d 351, 352 (1988). In determining whether to dismiss an information, a "trial court may give due consideration to the condition of its calendar, other pending cases, public expense, the health of the judge, and the rights of co-defendants." *Adams*, 91 Nev. at 575-76, 540 P.2d at 119 (internal quotation marks omitted).

Although Romero invoked his right to a speedy trial, the district court continued the trial over his objection because (1) Romero did

not yet have the preliminary hearing transcript, and proceeding to trial without it would have likely generated an ineffective assistance claim; (2) Judge Herndon did not have time to conduct the trial at the set date, and the case was not eligible for overflow treatment; and (3) Betancourt was not prepared for trial, as he had just recently obtained a new attorney. As a result, the district court stated that the continuances were made at the court's convenience. We conclude that these were proper considerations and that the district court did not abuse its discretion in declining to dismiss the information pursuant to NRS 178.556.

However, NRS 178.556 "does not define the constitutional right" to a speedy trial. *Anderson v. State*, 86 Nev. 829, 834, 477 P.2d 595, 598 (1970). Indeed, "there is no fixed time that indicates when the [constitutional] right to a speedy trial has been violated; thus, the right is assessed in relation to the circumstances of each case." *Furbay v. State*, 116 Nev. 481, 484, 998 P.2d 553, 555 (2000). This court considers the following factors in determining whether a defendant's constitutional speedy trial right has been violated: "(1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Id.* at 484-85, 998 P.2d at 555.

We hold the continuances did not violate Romero's constitutional right to a speedy trial. The trial was delayed approximately four and a half months, and as previously discussed, the district court had good cause for the delay. *Id.* at 485, 998 P.2d at 555-56 (holding a five and a half *year* delay did not deprive the defendant of his Sixth Amendment speedy trial right); *But see Wood v. Sheriff, Carson City*, 88 Nev. 547, 548-49, 501 P.2d 1034 (1972) (holding that a defendant's Sixth Amendment speedy trial right was violated where the State caused the sixteen month

delay and failed to justify it). Furthermore, although Romero did invoke his rights, Romero has not argued how the delay has prejudiced him. Therefore, we conclude Romero's constitutional and statutory speedy trial rights were not violated.

*Due Process Rights*

Romero argues that the district court violated his due process rights because it erroneously concluded his confession was voluntary, despite the fact he had used drugs the day before the confession was made. We disagree.

"Where the district court's determination that a confession is voluntary is supported by substantial evidence, we will not substitute our judgment for that of the district court." *Steese v. State*, 114 Nev. 479, 488, 960 P.2d 321, 327 (1998). "Substantial evidence is that which a reasonable mind might consider adequate to support a conclusion." *Id.*

"A confession is admissible only if it is made freely and voluntarily . . . ." *Passama v. State*, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987). "In order to be voluntary, a confession must be the product of a rational intellect and a free will." *Id.* at 213-14, 735 P.2d at 322 (internal quotation marks omitted). Furthermore, "[i]ntoxication without more will not preclude the admission of incriminating statements unless it is shown that the defendant was so intoxicated that he was unable to understand the meaning of his statements." *Stewart v. State*, 92 Nev. 168, 170-71, 547 P.2d 320, 321 (1976).

Substantial evidence supports the district court's conclusion that Romero's statement was voluntary. Although Romero admitted he had a heroin addiction and that he had used heroin the day prior to the interview, there is no evidence to suggest that Romero was under the

SUPREME COURT OF NEVADA

(O) 1947A

influence at the time of the interview. Detective Bruno read Romero his *Miranda* rights, and Romero stated he understood them. In addition, Detective Bruno testified that Romero did not appear under the influence of any narcotics at the time of the interview. Furthermore, the district court correctly recognized that Romero's answers were "long . . . cogent, comprehensible, [and] reasonable," and that they did not give the impression Romero was unable to understand the questions he was asked or the answers he was providing. Therefore, we conclude Romero's due process rights were not violated.

*Juror Challenges*

Romero argues that the district court erroneously denied two of his juror challenges for cause. We agree; however, we hold Romero has failed to demonstrate any resulting prejudice.

Under NRS 175.036(1), "[e]ither side may challenge an individual juror . . . for any cause . . . which would prevent the juror from adjudicating the facts fairly." When a prospective juror is challenged for cause, the district court has broad discretion in deciding whether to remove the prospective juror. *Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125 (2005). "The test for evaluating whether a juror should have been removed for cause is whether a prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* (internal quotation marks omitted). Furthermore, "[d]etached language considered alone is not sufficient to establish that a juror can be fair when the juror's declaration as a whole indicates that she could not state unequivocally that a preconception would not influence her verdict." *Id.* at 581, 119 P.3d at 125.

Romero challenged Juror No. 111 and Juror No. 130. Juror No. 111 stated that his father had a respect for police officers and that his brother considered becoming a police officer as his first career choice. As a result, Juror No. 111 stated that he viewed police officers as authority figures and that he had a slight bias in favor of them. He also stated that he was the victim of two different thefts, which might cause him to be slightly more sympathetic to the victim. However, Juror No. 111 said "I think I would be fair," and that he could scrutinize a police officer's testimony if he believed the officer was lying. Juror No. 130 stated (1) she had heard about Romero's case on the news and discussed the case with others, (2) it was "sad . . . that somebody so old was hurt so very badly," and (3) that although she would "like to think [she] would be objective," she was not sure "[she] absolutely could be objective in this situation."

We hold that the district court abused its discretion in denying Romero's juror challenges for cause. Both of the challenged prospective jurors espoused prejudices that could be reasonably understood as preventing them from adjudicating the facts fairly. Juror No. 111 specifically stated he would be biased, albeit slightly, in favor of police officers, and Juror No. 130 stated she felt bad for the elderly victim and was not sure she could be objective. Furthermore, when pressed on their prejudices, neither prospective juror offered unconditional assurance that they would be fair and impartial; rather, they both stated that they *thought* they could be fair, or that they *would like to think* they would be fair. *See Bryant v. State*, 72 Nev. 330, 332-33, 305 P.2d 360, 361 (1956) (holding a district court erred in failing to remove a prospective juror for cause when the juror stated she had read about the case in the newspaper

and had already formed an opinion on the matter, even though the juror subsequently stated she would act fairly and impartially).

However, "[i]f the jury actually seated is impartial, the fact that a defendant had to use a peremptory challenge to achieve that result does not mean that the defendant was denied his right to an impartial jury." *Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005) (emphasis added). Therefore, a defendant must show (1) he exhausted all of his peremptory challenges, and (2) that any juror actually impanelled was unfair or biased. *See id.*; *see also Bryant*, 72 Nev. at 335, 305 P.2d at 362.

Romero used peremptory challenges on both Juror No. 111 and Juror No. 130; therefore, neither was actually impanelled. Furthermore, Romero does not allege that any juror actually seated was unfair or biased. Therefore, Romero has failed to demonstrate any prejudice resulted from the district court's error.

*Cumulative Error*

Finally, Romero contends that cumulative error warrants reversal because (1) the issue of Romero's guilt was close, (2) the quality and character of the jury instruction errors were severe, and (3) the crime is grave because it is a robbery conviction. We disagree.

"The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002). We consider the following factors in reviewing a claim of cumulative error: "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

Although the evidence of Romero's guilt may not be overwhelming, and a robbery charge is a serious charge whose punishment should not be lightly considered, Romero has failed to demonstrate any prejudice resulted from the aforementioned errors. Therefore, we find that such errors do not warrant reversal, either individually or cumulatively. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Hardesty

_____, J.
Saitta

_____, J.
Pickering

cc:     Hon. Douglas W. Herndon, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk