VIVIAN L. ALBITRE, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 16589

June 25, 1987 · 738 P.2d 1307

[Rehearing denied October 29, 1987]

*Conner & Steinheimer,* Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, *Gary Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

# OPINION

By the Court, STEFFEN, J.:

A vehicular collision resulting in two deaths culminated in appellant Albitre's conviction of two counts of felony driving under the influence of intoxicants, two counts of felony reckless driving and two counts of involuntary manslaughter. Our review of the record reveals a fair trial but redundant convictions. Accordingly, we affirm in part and reverse in part.

Every aspect of this case contributes to an overwhelming sense of tragedy. What began as a convivial wedding celebration, interspersed with festive drinking atypical of Albitre, ended in the violent death of an elderly couple.

Albitre, with her grandmother and six-year-old daughter, drove to a friend's wedding reception at the Christmas Tree Inn, a restaurant located several miles from Reno on the mountainous Mt. Rose Highway. The trio arrived at the Inn at 1:00 p.m. on April 7, 1984, and left approximately three and one-half hours later when the reception concluded. Albitre drove her father's pick-up truck to and from the place of celebration. Approximately one-half mile downhill from the Inn, Albitre sought to negotiate a sharp, 180-degree curve, but started losing control as the pick-up skidded to the outside and lightly scraped the guard rail for about forty feet. In apparent fear of going over the hill, Albitre overcompensated and turned the truck across the highway and into the path of an oncoming automobile occupied by the decedents. The elderly victims died at the scene; Albitre and her passengers suffered relatively minor injuries.

Commencing one and one-half hours after the accident, three blood samples were taken from Albitre at intervals of thirty minutes. The three samples reflected decreasing blood alcohol percentages of .163, .148 and .131.

The State produced both eyewitness and expert testimony tending to prove that Albitre either entered the curve too fast or started to turn too late, or both. Albitre called a number of witnesses who testified that she seldom drank and that she was not intoxicated at the time she left the reception. In addition to denying intoxication, Albitre contended that a brake defect was the cause of the accident.

Albitre's first issue on appeal concerns allegations of prosecutorial misconduct. The State conceded at oral argument that misconduct occurred, but maintained that it was not of a magnitude warranting reversal. We agree.

The two most serious of the prosecutor's infractions involved announcing to the jury that "we don't try people that we believe are innocent" and demeaning defendant's expert witness as one who "goes to the highest bidder." The former statement, insinuating guilt merely from the decision to prosecute, was soundly condemned by this court in McGuire v. State, 100 Nev. 153, 677 P.2d 1060 (1984).[1] The latter, implying duplicity and corruption on the part of both defense counsel and the expert witness, has been similarly denounced in Sipsas v. State, 102 Nev. 119, 716 P.2d 231 (1986). Neither of the referenced incidents drew an objection from defense counsel.

We have less difficulty in determining that this misbehavior was non-prejudicial than we do in understanding why it occurred. In both instances, the impropriety of the prosecutor's conduct was beyond speculation. We therefore take little comfort from the fact that, in the context of this issue, Albitre's trial, viewed in its entirety, conformed adequately to the due process standard of fairness. See United States v. Young, 470 U.S. 1 (1985). Suffice it to say that we are unwilling to forever encourage the perception that our admonitions are "as sounding brass or a tinkling cymbal." We expect, and are moving inexorably to assure, that ethical trial conduct will prevail among all counsel in Nevada's courts.

The second major thrust of Albitre's appeal bears on the effectiveness of defense counsel. We have considered this issue with care and conclude that the cold record does not warrant deviation from this court's firm preference for having issues of ineffective assistance of trial counsel decided initially in post-conviction proceedings before the trial court. See Lewis v. State, 100 Nev. 456, 686 P.2d 219 (1984).

Finally, Albitre urges reversal based upon four jury instructions assertedly infected with error. This contention is without merit. The instructions either correctly stated the law or, in any event, formed no basis for prejudicial error.

Notwithstanding our rulings on Albitre's specified issues, we conclude that she is entitled to relief from redundant convictions that do not comport with legislative intent.

It is clear that Albitre was properly convicted of two counts of causing the death of another by driving a vehicle while intoxi-

---

[1] We note, however, that the prosecutor made the statement in response to defense counsel's comment concerning Albitre's innocence. The comments occurred during *voir dire* and under circumstances that ameliorate the character of the prosecutor's conduct.

cated, a felony under NRS 484.3795. Galvan v. State, 98 Nev. 550, 655 P.2d 155 (1982). It is equally clear to this court that the remaining four felony convictions involving two counts of involuntary manslaughter and two counts of causing the death of another by reckless driving are redundant to the legitimate counts and therefore must be reversed.

The gravamen of all the charges is that Albitre proximately caused the death of two persons by operating a vehicle in a reckless and unsafe manner due to her intoxication. The State has simply compounded the convictions by eliminating the aspect of alcohol from the four counts under question. We are convinced that the Legislature never intended to permit the State to proliferate charges as to one course of conduct by adorning it with chameleonic attire. Although charging to the limit may be justified to cover developing nuances of proof, the jury should have received an instruction limiting the number of conviction alternatives. The failure to do so was error.

We have carefully considered all other issues raised but not discussed and conclude that they are without merit.

The judgment of conviction for two counts of felony driving under the influence of intoxicants is affirmed; the remaining four convictions are reversed and the cause remanded for new sentencing.

YOUNG and MOWBRAY, JJ., concur.

SPRINGER, J., dissenting:

I dissent in this case because I do not think Mrs. Albitre got a fair trial. If she had had a fair trial, there is a strong possibility that she would have been acquitted.

Albitre did not get a fair trial because the jury was pressed to a verdict of guilty without having been required to find one of the essential elements of the crime, namely that, as was charged in the information, Albitre's "act of driving while under the influence of intoxicating liquor and neglect of duty *proximately caused* the death" of the victims. (Emphasis added.)

No doubt prompted by State v. Johnston, 93 Nev. 279, 564 P.2d 186 (1977) (state must allege and prove at trial that, in addition to showing that defendant was driving under the influence, it must show the acts *causing* the death), the prosecutor requested a proximate cause instruction. The state's requested instruction was refused for no reason that appears in the record. The court did instruct the jury on the definition of proximate cause, but the definition was necessarily meaningless to a jury that was never told that in order to convict Albitre her intoxication and driver's conduct had to be proved beyond a reasonable doubt to have been the proximate cause of the deaths.

Failure of the trial court to advise the jury that proximate cause

was an element of the offense is just as bad as the court's not telling the jury that intoxication was an essential element of the offense.

That the court did not instruct the jury on the law relating to all of the essential elements of the crimes is really all that need be said because in the circumstances of this case, there was virtually no chance of acquittal absent an instruction on this essential legal element of the crime.[1]

There are additional aspects of this case that add to the "fairness problem" referred to by the prosecutor. For example, since the only defense interposed by defense counsel in this case was that Albitre's drinking was not the cause of the victims' deaths, it is hard to understand why counsel did not ask the court for an instruction telling the jury that if the accident was caused by other than Albitre's intoxication, she could be acquitted. This failure to seek legal instruction on Albitre's only defense and counsel's decision not to call as a witness his client, a non-drinking mother of two small children, involved in a family wedding, and with no prior criminal record of any kind, leads one to wonder about the question of adequacy of counsel.

In dissenting here I do not find it necessary to conclude that Albitre's representation was inadequate as a matter of law. I include it only as one in a series of considerations that lead me to the conclusion that Albitre's trial was one in which conviction was inevitable.

In a similar category is the conduct of the prosecutor who, among other acts of misconduct, told the jury that "We [the prosecutor's office] don't try people we believe are innocent." Countless times we have condemned the prosecutor's putting the prestige of that office behind an expressed opinion of guilt of a defendant. As stated in the majority, "the impropriety of the prosecutor's conduct was beyond speculation." The misconduct was conceded by the prosecutor, who himself characterized this kind of prosecution as "improper and inappropriate" and acknowledged during appellate argument that "there is definitely a fairness problem" here.

The majority argues that Albitre was not prejudiced by a rather extravagant and broad-spectrum course of prosecutorial misconduct. I must allow, however, that the majority has a point here. Albitre may not have been hurt by the prosecutor's remarks

---

[1]Just as a side note I would observe that proximate cause is generally recognized as an element of this offense. I call attention to California Jury Instructions: Criminal (CALJIC), Form 12.60 (rev. 1987), under which the jury would be advised that the offense is committed when "any person who, while under the influence of an alcoholic beverage drives a vehicle and when so driving does any act forbidden by law or neglect any duty imposed by law in the driving of such vehicle which act or neglect *proximately causes*" injury. (Emphasis added.)

because there was no real possibility of Albitre's being acquitted in a trial in which the jury was never instructed on all of the necessary elements of the charged crimes. Nevertheless, I maintain that violation of clear standards relating to prosecutorial misconduct announced by this court necessarily had an unfair effect on this trial, particularly in light of the other elements of unfairness which I describe in this dissent.

The "fairness problem" mentioned by the prosecutor arises out of this: It is not easy for a prosecutor to get a victory in this kind of case, *e.g.* conviction and imprisonment of a mother of two infants who must be separated from their mother at a critical stage of their development. Some real pressure must be exerted, such as: "We don't try people that we believe are innocent," which is universally condemned as being prejudicial, because it unfairly leads the jurors to conclude that the prosecution knows more about the case than they do and that if the defendant is being prosecuted she must be guilty. Such tactics should not be approved by this court.

A final tilt on the scales of justice comes from the jury's being instructed by the court that with a .10 blood alcohol reading Albitre was *presumed* to be under the influence of alcohol, without being adequately advised that it did not have to accept the presumption under all circumstances. Although the court did instruct the jury, in technical legal terms, that the presumption was "rebuttable" and that it could disregard the presumption "if any evidence received at this trial *raises* a reasonable doubt" that she was intoxicated, it still seems to me that the jury was being led into a position in which conscientiously motivated jurors simply could not possibly acquit.[2] (Emphasis added.) Albitre did not have a chance.

As the majority so astutely observes, "the gravamen of all the charges is that Albitre proximately caused the deaths of two persons by operating a vehicle in a reckless and unsafe manner due to her intoxication." It is too bad that the jury was not told what the gist or gravamen of the defendant's offense was. The jury could then have dealt fairly with the questions of whether Albitre's comparatively low blood alcohol content showed,

---

[2]In Barnett v. State, 96 Nev. 753, 616 P.2d 1107 (1980), and Hollis v. State, 96 Nev. 207, 606 P.2d 534 (1980), we held that instructions dealing with presumptions must be framed in permissive terms. I am not prepared to say that the instruction in this case violates NRS 47.230 or that it is contrary to our holdings in the cited cases, but it is very close, and the mere use of the word "rebuttable" and the court's indicating to the jury that evidence must *raise* a reasonable doubt, does not present a very clear manner of describing the non-binding nature of the presumption. The instruction, in my mind, approaches the state of having "effectively relieved the prosecution of its burden of proof of an essential element of the crime." *Barnett,* 96 Nev. at 755, 616 P.2d at 1108.

beyond a reasonable doubt, that it was the alcohol and not some other cause that brought about the tragic deaths of two persons.

I would reverse the convictions affirmed by the majority and remand for a new, fair trial.

I concur: GUNDERSON, C. J.

