CHRISTOPHER MARK SKIBA, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 28285

May 28, 1998                                    959 P.2d 959

*Lockie & Macfarlan,* Elko, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Gary
D. Woodbury,* District Attorney, *Roger R. Harada,* Deputy Dis-
trict Attorney, Elko County, for Respondent.

# OPINION

By the Court, Shearing, J.:

This case arises from an altercation at the Branding Iron
Saloon ("Branding Iron") in Elko during the early morning

hours of September 17, 1994. The trial of this matter was marked by varying accounts of the incident.

On the evening of September 16, 1994, Billy McKenzie ("McKenzie") and five of his friends had been drinking at the Branding Iron. McKenzie and appellant, Christopher Mark Skiba ("Skiba"), each testified that the other initiated a confrontation inside the bar at approximately 2:00 a.m. on September 17, 1994.

According to the State's evidence, security intervened and escorted McKenzie and two of his friends out of the establishment through the front door. As they were leaving, they passed police officers entering the building. One of the officers testified that the fight had apparently ended before his arrival.

According to McKenzie, the three men walked toward the parking lot where their car was parked. Their intention was to leave the area. In the meantime, Skiba exited through the rear of the building and proceeded around to the front. There, according to the State's evidence, he sought the assistance of three associates, picked up a broken beer bottle and proceeded toward McKenzie in the parking lot. Skiba struck McKenzie with an upward thrust of the broken beer bottle, cutting McKenzie's left cheek and eyeball.[1]

Skiba testified that, after the confrontation in the bar, he feared McKenzie would seek further retribution against him and that he sought the assistance of friends as he approached the front of the building. Thus, because he was outnumbered, he thought he was in immediate danger.

Skiba claims that he was, in fact, headed home in the direction of the parking lot when he was confronted by the very men he was trying to avoid. Out of fear, he picked up an unbroken beer bottle. When his adversaries approached, he hit McKenzie in the face with the bottle in self-defense.

The trial jury returned a guilty verdict of one count of battery with a deadly weapon and one count of battery causing substantial bodily harm. Skiba was sentenced to five years and fours years, respectively, on each count, in the Nevada State Prison. Both sentences were suspended, and he was placed on probation. Skiba appeals.

## DISCUSSION

During closing arguments, the prosecutor summed up the evidence against Skiba, emphasizing that the State's evidence was

---

[1]This was the single act which gave rise to the criminal charges against Skiba.

consistent. The prosecutor also discussed the inconsistencies in Skiba's evidence, particularly his testimony. In this context, the prosecutor stated, "The defendant is lying."

In Ross v. State, 106 Nev. 924, 926 n.3, 803 P.2d 1104, 1105 n.3 (1990), in reference to a defense witness, during closing arguments the prosecutor stated, "I'm telling you here now this woman was lying for her husband." This court held that the prosecutor's statement was improper and required reversal:

> *[T]he prosecutor's remarks unfairly undermined the defense theory by improperly impugning a critical defense witness.* It can be inferred that these remarks were fresh in the jurors' minds as they entered the jury room and commenced their deliberations. In addition, the imprimatur of the prosecutor's office added force and legitimacy to the prosecutor's argument to the jury. It is the jury's function to determine guilt or innocence. Absent these errors, it cannot be said with sufficient confidence that the jury would have reached the same verdict.

*Id.* at 928, 803 P.2d at 1106 (footnote omitted) (emphasis added).

Additionally, in Witherow v. State, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988), we held that characterization of a witness's testimony as a lie is improper and "amounts to an opinion as to the veracity of a witness in circumstances where veracity might well have determined the ultimate issue of guilt or innocence. . . . '[I]t was for the jury, and not the prosecutor, to say which witnesses were telling the truth.' " (quoting Harris v. United States, 402 F.2d 656, 658 (D.C. Cir. 1968)).

The critical factual issue in this case was whether Skiba had been the aggressor in the parking lot or had acted only in self-defense when striking McKenzie in the face with a broken or unbroken beer bottle. McKenzie and two of his friends testified that Skiba proceeded directly toward them with the broken beer bottle in his hand and struck McKenzie without any immediate provocation. On the other hand, Skiba testified that he was trying to avoid McKenzie and his friends, but directly encountered them as he entered the parking lot. Out of fear, he picked up the bottle and struck McKenzie when approached by his adversaries.

Evidence also indicates that Skiba had asked his friend, Avery Fagerberg ("Fagerberg"), to back him up in the fight. According to Fagerberg, although Skiba was the aggressor, Skiba had asked Fagerberg to give false testimony to the contrary. Further, not only was Skiba's testimony contradicted by every other witness to the parking lot altercation, his description of the events inside the Branding Iron was also vigorously disputed.

In summary, the evidence against Skiba was overwhelming. We therefore hold that the final argument observation by the prosecuting attorney that "the defendant lied," although violative

of our prior admonitions with regard to rhetorical excess at final argument, *Witherow,* 104 Nev. at 724, 765 P.2d at 1155, does not merit reversal of Skiba's conviction.

Skiba next contends that his convictions for battery with a deadly weapon and battery causing substantial bodily harm,[2] both pursuant to NRS 200.481,[3] are "redundant."

In Albitre v. State, 103 Nev. 281, 738 P.2d 1307 (1987), defendant caused the death of two people while driving under the influence of alcohol. She was charged and convicted of two counts of causing the death of another while driving a vehicle while intoxicated ("DUI"), two counts of involuntary manslaughter, and two counts of causing the death of another by reckless driving. *Id.* at 282, 738 P.2d at 1308. This court held that defendant was properly convicted of the DUI charges but that the involuntary manslaughter and reckless driving convictions were "redundant to the legitimate counts." *Id.* at 284, 738 P.2d at 1309.

> The gravamen of all the charges is that Albitre proximately caused the death of two persons by operating a vehicle in a reckless and unsafe manner due to her intoxication. The State has simply compounded the convictions by eliminating the aspect of alcohol from the four counts under question. *We are convinced that the Legislature never intended to permit the State to proliferate charges as to one course of conduct by adorning it with chameleonic attire.* Although charging to the limit may be justified to cover

---

[2] NRS 0.060 defines "substantial bodily harm" as:
  1. Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ; or
  2. Prolonged physical pain.

[3] NRS 200.481 states in pertinent part:
  1. As used in this section:
  (a) "Battery" means any willful and unlawful use of force or violence upon the person of another.
  . . . .
  2. [A] person convicted of a battery . . . shall be punished:
  . . . .
  (b) If the battery is not committed with a deadly weapon, and *substantial bodily harm* to the victim results, for a category C felony as provided in NRS 193.130.
  . . . .
  (e) If the battery is committed *with the use of a deadly weapon,* and:
  (1) [F]or a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 10 years, and may be further punished by a fine of not more than $10,000.
(Emphasis added.)

> developing nuances of proof, the jury should have received an instruction limiting the number of conviction alternatives. The failure to do so was error.

*Id.* (emphasis added). In the instant matter, such a limiting instruction was offered, but was erroneously denied by the lower court. We hold that, under these limited circumstances, the two convictions arising from Skiba's single act of hitting McKenzie with a broken beer bottle causing substantial harm, gives rise to the same redundancy contemplated in *Albitre*.[4]

Accordingly, we hereby affirm Skiba's conviction under NRS 200.481(2)(e) and vacate the conviction imposed under NRS 200.481(2)(b). We have reviewed Skiba's other contentions on appeal and find them to be without merit.

ROSE, J., concurs.

MAUPIN, J., concurring:

I agree with the majority that Skiba may only be convicted of one charge of battery. While I also agree that the remaining conviction should not be disturbed on appeal, I write separately because, in my view, the prosecuting attorney's final argument observation that "the defendant lied," without more, did not go beyond the realm of permissible advocacy. *But cf.* Witherow v. State, 104 Nev. 721, 765 P.2d 1153 (1988). I perceive no difference between a simple argument that a party or a witness has lied or, on the other hand, demonstrating "to a jury through inferences from the record that a defense witness's testimony is palpably untrue." Ross v. State, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990).

Absent some flagrant violation, such as a prosecutor clearly and specifically injecting his or her own credibility into the proceedings by indicating his or her personal beliefs (i.e., "I wouldn't be here if I didn't believe the victim in this case"), attorneys should be able to argue that a witness has lied or has spoken truthfully.[1,2] Thus, I believe that a simple argument regarding truth or falsity of a witness's testimony does not merit reversal, even in a close case, which this is not.[3]

---

[4]Consistent with prior authority, we note that redundancy does not, of necessity, arise when a defendant is convicted of numerous charges arising from a single act.

[1]*Ross* is correct in noting the impropriety of such arguments as, " 'I'm telling you now this woman is lying for her husband.' " Ross v. State, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990). This is because such statements clearly inject the credibility of the prosecuting attorney into the case.

[2]*See* Collins v. State, 87 Nev. 436, 439, 488 P.2d 544, 545 (1971) (holding that statements made in closing argument, when made as a deduction or conclusion from evidence introduced at trial, are permissible).

[3]Given their holdings, I must concede that the disposition I now suggest would mark a qualified retreat from *Ross* and *Witherow*.

YOUNG, J., concurring in part, dissenting in part, joined by SPRINGER, C. J.:

I concur with my fellow justices that Skiba can be tried on only one of the charges of battery. However, because the prosecutor committed such gross misconduct, a harmless error analysis is inappropriate under the narrow circumstances of this case, contrary to the holding in the plurality opinion.

The prosecutor told the jury, "both as a fact and as a conclusion," that Skiba lied to them on the stand, under oath. Ross v. State, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990). These statements are clearly error in this state, as well as in other jurisdictions. *Id.*; Witherow v. State, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988); *see also* Harris v. United States, 402 F.2d 656, 657-58 (D.C. Cir. 1968); State v. Stringer, 897 P.2d 1063, 1071-72 (Mont. 1995); State v. Arlington, 875 P.2d 307, 325 (Mont. 1994); Smallwood v. State, 907 P.2d 217, 229 (Okla. Crim. App. 1995); Williams v. State, 658 P.2d 499, 500 (Okla. Crim. App. 1983).

In *Harris,* cited in *Witherow,* the United States Court of Appeals for the District of Columbia held that a prosecutor's statement that a defendant lied on the stand is highly improper. The court explained that the defendant's testimony is a lie *only if* the jury accepts all the government witnesses' testimony and rejects the defendant's testimony. *Harris,* 402 F.2d at 657-58. While many strong adjectives may be used to persuade the jury to return a verdict of guilt, "it was for the jury, and not the prosecutor, to say which witnesses were telling the truth." *Id.* at 658. The court held that the prosecutor may not divert the focus of the jury's consideration of the case from the facts in evidence to the attorney's personal evaluations of the weight of the evidence. *Id.* at 659.

The plurality opinion at least acknowledges that such statements are highly improper. The concurring opinion, however, inexplicably proposes to overrule governing authority in this state and hold that the unforgivable comments by the prosecutor are not even error at all. Unlike the concurrence, I do not propose to ignore the principles of *stare decisis;* I merely propose to extend an already existing precedent.

*Ross* and *Witherow* pertain to highly improper comments by the prosecutor about defense *witnesses*. In the current matter, the prosecutor utterly annihilated the credibility of the *defendant*. I conclude that stating that a defendant lied on the stand is even more egregious than a statement that a defense witness lied. Not only is a testifying defendant's credibility at issue, so is his guilt. A jury may disregard a defense witness's testimony without holding it against the defendant. Thus, utilizing a mere harmless error standard in such a situation, as is employed by this court, is appropriate with regard to the credibility of a non-defendant

witness. However, when the jury is told that the defendant, himself, is the perjurer, I find it extremely difficult to imagine that the jury could easily disregard his testimony without permitting the alleged unlawful act of lying under oath from influencing the verdict. Additionally, I firmly believe that stating that the defendant is a liar is a particularly inflammatory and prejudicial method of conveying to the jury inconsistencies and discrepancies in the evidence.

Moreover, unlike many cases where a defendant takes the stand and testifies only as to his version of events, Skiba also testified as to his state of mind. In order to disprove the only element of battery at issue in the trial, whether or not Skiba hit Mckenzie in self-defense, Skiba testified as to his reasonable belief of immediate harm. The veracity and credibility of Skiba's testimony was especially crucial to dispute the State's evidence that this was not self-defense.

Although the State presented numerous witnesses to prove that Skiba did not act in self-defense, it is the *quality,* not the *quantity,* of evidence upon which a jury relies in rendering its verdict. Jury instruction no. 14 specifically stated, "It is lawful for a person who is being assaulted to defend himself from attack if, as a reasonable person, he has grounds for *believing and does believe* that bodily injury is about to be inflicted upon him." (Emphasis added.) If the jury believed Skiba, it *would have* acquitted him because the State would have failed to meet its burden that Skiba did not act in self-defense. *See* Barone v. State, 109 Nev. 778, 780, 858 P.2d 27, 29 (1993) (holding that in proving a case of battery, the State has the burden of proving the defendant did not act in self-defense). I conclude that informing the jury at closing arguments that Skiba's testimony about his belief of immediate harm is a lie is insufficient to meet the State's burden under *Barone*.

Accordingly, in a situation where the state of mind of the defendant is the ultimate issue in the case, the defendant testifies, and the prosecutor informs the jury that the defendant lied on the stand, I believe this court should reverse the conviction and not use a mere harmless error standard. I conclude that using a harmless error standard too often may give free reign to prosecutors to continue the misconduct at issue. I fear, especially in cases of particularly gross misconduct, as the present matter, such a standard will encourage other prosecutors to repeat this egregious error in the future.[1]

---

[1]Further, a holding that calling a defendant a liar on the stand is mere harmless error (or worse yet, no error at all) may violate a defendant's Fifth

I feel that the prosecutors in this state need a stern reminder of their role as representatives of the people. "[A prosecutor] has no obligation to win at all costs and serves no higher purpose by so attempting." Bruno v. Rushen, 721 F.2d 1193, 1195 (9th Cir. 1983). Indeed, a prosecutor's interest in a criminal case "is not that it shall win a case, but that justice be done . . . . But, while he may strike hard blows, he is not at liberty to strike foul ones. *It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.*" Berger v. United States, 295 U.S. 78, 88 (1934) (emphasis added).

I further remind Nevada prosecutors: "It can be inferred that [the prosecutor's improper remarks that the defense witness lied] were fresh in the jurors' minds as they entered the jury room and commenced their deliberations. In addition, the imprimatur of the prosecutor's office added force and legitimacy to the prosecutor's argument to the jury." *Ross,* 106 Nev. at 928, 803 P.2d at 1106 (footnote omitted).

Due to the severe impact an accusation of lying under oath has on a criminal defendant who testified as to his state of mind at the time of the relevant incident, I must conclude that the prosecutor's comment in this case constitutes more than mere harmless error and requires reversal of Skiba's conviction.

---

Amendment right to testify on his own behalf. What defendant would ever choose to testify at their trial knowing that the prosecutor could permissibly disparage him in such a particularly inflammatory way? What competent defense counsel would allow his client to testify under such a threat?