GABRIEL SALAZAR, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 38828

June 11, 2003                                          70 P.3d 749

*Mayfield, Turco & Gruber* and *John M. Turco,* Las Vegas, for
Appellant.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,*
District Attorney, *James Tufteland,* Chief Deputy District Attorney,
and *James R. Sweetin,* Deputy District Attorney, Clark County, for
Respondent.

Before SHEARING, LEAVITT and BECKER, JJ.

## OPINION

*Per Curiam:*

Gabriel Salazar appeals from a judgment of conviction following a jury trial.[1] He asserts that his convictions of battery with use of a deadly weapon with substantial bodily harm[2] and mayhem with use of a deadly weapon[3] are duplicative. We agree and reverse his battery conviction.

### *FACTUAL AND PROCEDURAL HISTORY*

Salazar, his two brothers, and two friends attended a birthday party for Michael Howard at an apartment in Las Vegas. While the party was ongoing, an automobile accident occurred outside the apartment, and the partygoers went out to help. Salazar remained behind. Paul Clark returned from the accident to the apartment, and he and Salazar began arguing. Clark left the apartment, and Salazar followed him outside and began shouting.

Several people asked Salazar and his companions to leave. Amber Brown, another party guest, told Salazar to calm down and leave the party. Salazar swore at her and pushed her. The two began fighting, and Salazar punched her several times in the face and upper parts of her body. Brown testified that after Salazar punched her neck, she felt a sharp pain. Brown backed away, picked up a beer bottle and threw it at Salazar, but she missed. Salazar lunged towards her, but Clark jumped between the two, punched Salazar in the side of the head, and began fighting with him.

Salazar punched Clark several times in the neck and face. Clark testified that one punch felt like a "pinch." Clark backed away from the fight, and Salazar told Clark to look at his neck. Clark did and realized he was bleeding heavily. Clark ran back into the apartment, and a general melee broke out between the remaining guests, Salazar, and one of Salazar's friends. Salazar sustained some injuries in the fight.

---

[1]*See* NRS 177.015(3).

[2]*See* NRS 200.481(2)(e)(2); NRS 0.060.

[3]*See* NRS 200.280; NRS 193.165.

When Brown returned to the apartment, another guest noticed Brown was bleeding heavily from a wound in her neck.[4] Brown's friend drove Clark and Brown to the hospital. Brown sustained a shallow cut on her side and a deep cut to her neck, the latter requiring stitches. Clark sustained three cuts, one of which severed a nerve resulting in permanent numbness from his ear to his jaw and the partial loss of control over a muscle controlling his lip. He required over one hundred stitches to close his wounds. At trial, to establish the extent of Brown's and Clark's injuries, the State presented testimony from the two victims, their medical records, and photos of their injuries.

Salazar and his friends attempted to leave the party, but before they could leave, police officers arrived. Because the police officers were responding to a report of a possible stabbing, they handcuffed and patted down Salazar and his companions. An officer retrieved a bloody box cutter from Salazar's pants pocket.

The police officers observed blood and mud on Salazar's clothing. Initially, Salazar claimed he was wrestling with some friends and he did not know where the blood came from. The police officers spoke with Salazar's companions and other witnesses and learned about the argument, fight, and stabbing that occurred at the party. From these statements, the police suspected Salazar was involved in the stabbing. A police officer read Salazar his *Miranda*[5] rights. Salazar admitted he was involved in a fight and he had cut some people after he became frightened. He also admitted that the box cutter belonged to him.

At trial, Salazar's theory of the case was that he acted in self-defense after several people attacked him simultaneously without provocation. He testified he was kicked and punched while he was on the ground and someone shot a gun during the fight. Thus, he feared for his life and used his box cutter to defend himself. Salazar testified that when he was on the ground, he began swinging the box cutter in a wide circle to warn away his assailants, and somehow he cut both Brown and Clark.

For his actions towards Clark, the jury found Salazar guilty of one count of battery with use of a deadly weapon with substantial bodily harm and one count of mayhem with use of a deadly weapon. He was also found guilty of one count of battery with use of a deadly weapon for his actions towards Brown.

The district court sentenced Salazar to two concurrent twenty-four to seventy-two-month prison terms for the battery convictions. Additionally, the district court sentenced Salazar to a twenty-four to seventy-two-month term for the mayhem conviction, plus an equal and consecutive term of twenty-four to seventy-two months

---

[4]Brown did not see Salazar with a weapon.

[5]*Miranda v. Arizona,* 384 U.S. 436 (1966).

for use of a deadly weapon. The latter sentence was to run concurrently with the battery sentences. The district court also ordered Salazar to pay a $25 administrative fee, a $250 DNA fee, and $140 in restitution. Salazar appeals.

## DISCUSSION

Salazar argues on appeal that he should not have been convicted of both battery with use of a deadly weapon with substantial bodily harm and mayhem with a deadly weapon for the injuries he inflicted upon Clark. We agree and reverse his conviction for battery with use of a deadly weapon with substantial bodily harm.

The Double Jeopardy Clause of the United States Constitution protects defendants from multiple punishments for the same offense.[6] This court utilizes the test set forth in *Blockburger v. United States*[7] to determine whether multiple convictions for the same act or transaction are permissible.[8] "Under this test, 'if the elements of one offense are entirely included within the elements of a second offense, the first offense is a lesser included offense and the Double Jeopardy Clause prohibits a conviction for both offenses.' "[9]

Battery with use of a deadly weapon with substantial bodily harm and mayhem with a deadly weapon are separate offenses under the *Blockburger* test. However, while the State may bring multiple charges based upon a single incident, we will reverse " 'redundant convictions that do not comport with legislative intent.' "[10] When considering whether convictions are redundant, in *State of Nevada v. District Court*,[11] this court stated:

> The issue . . . is whether the gravamen of the charged offenses is the same such that it can be said that the legislature did not intend multiple convictions. "[R]edundancy does not, of necessity, arise when a defendant is convicted of numerous charges arising from a single act." *Skiba v. State,* 114 Nev. 612, 616 n.4, 959 P.2d 959, 961 n.4 (1998). The question is whether the material or significant part of each charge is the

---

[6]*Williams v. State,* 118 Nev. 536, 548, 50 P.3d 1116, 1124 (2002), *cert. denied,* 537 U.S. 1031 (2002); U.S. Const. amend. V.

[7]284 U.S. 299 (1932).

[8]*Williams,* 118 Nev. at 548, 50 P.3d at 1124 (citing *Barton v. State,* 117 Nev. 686, 692, 30 P.3d 1103, 1107 (2001)).

[9]*Id.* at 548, 50 P.3d at 1124 (quoting *Barton,* 117 Nev. at 692, 30 P.3d at 1107).

[10]*State v. Koseck,* 113 Nev. 477, 479, 936 P.2d 836, 837 (1997) (quoting *Albitre v. State,* 103 Nev. 281, 283, 738 P.2d 1307, 1309 (1987)).

[11]116 Nev. 127, 994 P.2d 692 (2000).

same even if the offenses are not the same. Thus, where a defendant is convicted of two offenses that, as charged, punish the exact same illegal act, the convictions are redundant.[12]

We conclude, under the specific facts of this case, that the gravamen of both the battery with use of a deadly weapon with substantial bodily harm and mayhem with use of a deadly weapon offenses are the same and, therefore, Salazar's convictions for battery and mayhem are redundant. The gravamen of the battery offense, as charged, is that Salazar cut Clark and he suffered substantial harm, which was the nerve damage. The gravamen of the mayhem offense, as charged, is that Salazar cut Clark and he suffered permanent nerve damage. Both arise from and punish the same illegal act—cutting Clark with a box cutter.[13] "[T]he Legislature never intended to permit the State to proliferate charges as to one course of conduct by adorning it with chameleonic attire."[14]

We have reviewed Salazar's other arguments and conclude that they either lack merit or constitute harmless error. The State presented sufficient medical evidence to convict Salazar for battery with substantial bodily harm; the district court did not abuse its discretion when it denied Salazar's two proposed jury instructions; and the district court's admission of evidence without a hearing that Salazar consumed alcohol was harmless error.

Accordingly, we affirm Salazar's convictions for battery with a deadly weapon and for mayhem with use of a deadly weapon. We reverse the conviction for battery with use of a deadly weapon with substantial bodily harm and remand to the district court to amend the judgment of conviction accordingly.

---

[12]*Id.* at 136, 994 P.2d at 698.

[13]*Cf. Skiba,* 114 Nev. 612, 959 P.2d 959 (redundant convictions for battery with a deadly weapon and battery with substantial harm when the convictions arose from single act of hitting victim with broken beer bottle).

[14]*Albitre,* 103 Nev. at 284, 738 P.2d at 1309.