**An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

XIAO YE BAI,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62907

**FILED**

SEP 2 8 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit kidnapping, first-degree kidnapping, extortionate collection of a debt, extortion, conspiracy to commit murder, burglary while in possession of a deadly weapon, first-degree murder with the use of a deadly weapon, and two counts of attempted murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

Appellant Xiao Ye Bai claims that the district court committed numerous errors. After considering each error, we conclude that reversal is not warranted and we affirm the judgment of conviction.

## *BACKGROUND*

Bai and the victim, Wen Jun Li, were engaged in a dispute over money. According to Bai, Li owed $10,000 to his father. According to the State, Li owed the $10,000 to United Bamboo, a Taiwanese gang to which Bai belonged. Thus, the State claims that Bai's attempts at collecting the debt, which ultimately led to Li's death, were at the gang's behest.

SUPREME COURT
OF
NEVADA

(O) 1947A

15- 29338

In April 2009, Bai and his then-girlfriend, Pei Pei, had recently moved to Las Vegas from Los Angeles and were having financial difficulties. Thus, Bai set out to collect the $10,000 debt owed by Li. Bai and Pei later spotted Li at a local market, and Bai confronted him. Bai took Li to Pei's car where he punched Li repeatedly, threatened to break Li's legs, and demanded that Li pay the money owed. Li told Bai that he could retrieve the money if Bai took him to the bank across the street, but when they went to the bank, it was closed. Li then offered to meet Bai within the next few days to give him the money. Bai agreed, but Li failed to meet him, and in subsequent searches, Bai was unable to locate Li.

On July 6, 2009, Bai was informed that Li was at Forbes KTV, a nightclub. Bai and Pei drove to the nightclub, and Pei waited outside in the car as Bai went inside. After locating and speaking with Li momentarily, Bai attacked him, chasing him around the nightclub and stabbing him thirty-eight times. Li died as a result of his wounds.

Later that day, Bai and Pei took a bus to Los Angeles and stayed at the home of San Gu or "Brother Three," who was alleged to be a fellow member of United Bamboo. After a series of trips between Los Angeles and Las Vegas, Bai and Pei were apprehended in Las Vegas.

Eleven days prior to trial, Bai filed a motion for a continuance to allow time for his father to travel from China to Las Vegas to testify at his trial. According to Bai, his father would testify to the debt owed by Li and to a brain injury from which Bai suffered. The district court denied Bai's motion, and a trial ensued.

At trial, Bai conceded that he was responsible for Li's death, but claimed that he only went to Forbes KTV with the intent to meet with Li about the family debt. The State presented Asian gang culture

SUPREME COURT
OF
NEVADA

(O) 1947A

testimony from Detective Tom Yu of the Los Angeles County Sheriff's Department to support its theory that Bai went to Forbes KTV intending to kill Li on behalf of United Bamboo. Proposed testimony from Bai's experts on "neurology damage and behavior," which supported his claim that his killing Li was the result of a mental break, and not a "contract execution," was excluded due to defective expert notification. Bai was ultimately convicted by a jury.

## DISCUSSION

*Request for continuance*

Bai brought his motion for a "several month[ ]" continuance eleven days before his trial, which had been pending for three years. Bai contends that the district court erred by denying his motion because the continuance would have allowed time for his father to travel from China to testify to the debt Li owed and the brain injury Bai suffered. "[G]ranting or denying a motion for a continuance is within the sound discretion of the district court." *Mulder v. State*, 116 Nev. 1, 9, 992 P.2d 845, 850 (2000). When reviewing a district court's decision to grant or deny a continuance, we consider the (1) prejudice to the court, (2) prejudice to the defense, and (3) defendant's diligence in attempting to secure witnesses. *See Lord v. State*, 107 Nev. 28, 42, 806 P.2d 548, 557 (1991).

In *Lord*, the district court denied the defendant's request for a half-day continuance to allow for his witnesses to travel to Nevada to testify at the penalty hearing. *Id.* at 32, 806 P.2d at 550. We determined that a district court may abuse its discretion by failing to grant a reasonable and modest continuance when the request is made to obtain important witnesses and when the requesting counsel or parties are not responsible for the delay. *Id.* at 42, 806 P.2d at 556-57. However, in

*Mulder*, prior to the penalty phase, the request for a sixty-day continuance was not modest, and the delay was Mulder's fault because he was not cooperating with his attorneys. 116 Nev. at 10, 992 P.2d at 850. Three witnesses also testified to mitigating circumstances at sentencing, and Mulder failed to fully explain any additional mitigating evidence that would have been presented had the court granted the continuance. *Id.* at 10, 992 P.2d at 850-51.

This case is distinguishable from *Lord* and comparable to *Mulder*. In *Lord,* the modest request for a continuance was for a half-day, whereas here, the request was for "several months," an even lengthier request than the sixty days we determined was not a modest request in *Mulder*. Thus, here, the request is also not a modest one. Additionally, unlike *Lord* but similar to *Mulder*, the defense was responsible for the delay. The defense had three years to prepare for trial and arrange for the travel of witnesses. Lastly, similar to *Mulder* but distinct from *Lord*, here, other witnesses, including Bai's mother, could have testified to both the debt and the brain injury. Therefore, as in *Mulder*, the district court did not abuse its discretion by denying Bai's motion to continue the trial.[1]

*Expert testimony*

At trial, the district court excluded Bai's experts' testimony, concluding that the experts' testimony on fight or flight response would be outside the scope of Bai's prior notice of experts, which provided that the doctors would testify to "neurology damage and behavior." On appeal, Bai

---

[1]Additionally, we conclude that Bai's argument that the continuance would allow him time to prepare for Pei's testimony for the State lacks merit.

contends that the district court abused its discretion by excluding his experts' testimony, resulting in prejudice. According to Bai, his experts' testimony on "neurology damage and behavior" as it relates to fight or flight response was essential to prove the killing resulted from a mental break, in contradiction to the States' claim that it was a "contract execution" ordered by United Bamboo.

We review the sufficiency of expert witness notice for abuse of discretion. *Perez v. State*, 129 Nev., Adv. Op. 90, 313 P.3d 862, 870 (2013). Here, in light of Bai's offer of proof, and to the extent that a written report was not required, we conclude that his notice of expert testimony did not amount to "[a] brief statement regarding the subject matter on which the expert witness is expected to testify and the substance of the testimony." *See* NRS 174.234(2)(a). No substance was provided. And the notice's bare statement, identifying "neurology damage and behavior" as the subject of testimony, was not sufficient to give notice that the experts would testify to fight or flight response. Therefore, the district court did not abuse its discretion when it excluded Bai's experts' testimony.

*Gang affiliation and hit man evidence*

Bai contends, generally, that the district court erred when it admitted gang-affiliation evidence and evidence that he was a hit man. Bai also contends, more specifically, that the district court erred when it admitted photographs of him posing as a hit man, and admitted Detective Yu's testimony about Asian gang culture.

This court reviews claims of evidentiary error for an abuse of discretion. *Holmes v. State*, 129 Nev., Adv. Op. 59, 306 P.3d 415, 418 (2013). Thus, "[a] decision 'to admit or exclude evidence will not be reversed on appeal unless it is manifestly wrong.'" *Id.* (quoting *Archanian v. State*, 122 Nev. 1019, 1029, 145 P.3d 1008, 1016 (2006)). NRS 48.035(1)

5

provides in part: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice."

Detective Yu's testimony on the culture of respect in Asian gangs was relevant to understanding motive. *See* NRS 50.275 (providing that if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by special knowledge . . . may testify to matters within the scope of such knowledge").

The evidence of Bai's relationship to United Bamboo and alleged status as a hit man for United Bamboo was probative of Bai's motive for killing Li, such that any prejudice was outweighed. *See Lay v. State*, 110 Nev. 1189, 1195, 886 P.2d 448, 452 (1994) ("The prosecutor was allowed to elicit evidence of motive, but was not allowed to inquire into specific prior criminal acts of the gang at the guilt phase."). In particular, the photographs admitted depicting Bai in all black and posing with weapons, ostensibly mimicking ideations of a hit man, were probative of his motive, and indeed do not warrant reversal under our plain error analysis.[2] *See Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008) ("We [generally] review a district court's decision to admit or exclude evidence for an abuse of discretion. However, failure to object precludes appellate review of the matter unless it rises to the level of plain error." (internal footnote and quotation omitted)).

---

[2]The plain error standard of review is appropriate because Bai's counsel stipulated to admission of the photographs.

Moreover, given the witness testimony as to the events leading up to and including the morning of July 6, 2009, we are persuaded that, had the district court excluded evidence of gang affiliation or that Bai was a hit man, the result would be the same. *See Rhymes v. State*, 121 Nev. 17, 22, 107 P.3d 1278, 1281 (2005) (concluding no reversible error exists where the result would have been the same if the trial court had not admitted the evidence). The same would be true of the result had the district court conducted a *Petrocelli* hearing before admitting the evidence. *Qualls v. State*, 114 Nev. 900, 904, 961 P.2d 765, 767 (1998) ("[T]he trial court's failure to conduct a *Petrocelli* hearing prior to admitting this evidence amounted to harmless error."); *see also Petrocelli v. State*, 101 Nev. 46, 51, 692 P.2d 503, 507 (1985), *superseded in part by statute as stated in Thomas v. State*, 120 Nev. 37, 45, 83 P.3d 818, 823 (2004) (approving the procedure followed by the district court prior to allowing questions pertaining to a collateral offense). Thus, we conclude reversal is also unwarranted on these grounds.

*Prosecutorial misconduct*

Bai contends that the following three comments, made by the State during closing argument, constituted prosecutorial misconduct, as they improperly referenced his failure to call witnesses:

1) [A] confirmed member [of the United Bamboo] who [hasn't] really disputed that he beat [Li] in May of 2009 and spent the next two months looking for him.

2) [It] is almost undisputed [that Bai] told Li I will break your legs if you didn't pay the money and we all agree he didn't pay the money.

3) And we don't need anything other than his letter to establish that . . . he's lying about the motive, and if he's lying about the motive there

is only one fact that must be true, he is a hit man for the Asian mafia and he deserves to be convicted of each and every count.[3]

Our review is for plain error because the defense failed to object. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008) (determining that "[h]armless-error review applies . . . only if the defendant preserved the error for appellate review" and "[w]hen an error has not been preserved, this court employs plain-error review"). Prosecutorial misconduct is reviewed in two steps. *Id.* at 1188, 196 P.3d at 476. The first step is to determine whether the prosecutor's behavior was improper. *Id.* And if so, the second step is to determine whether it constitutes reversible error. *Id.*

Although "[i]t is generally improper for a prosecutor to comment on a defendant's failure to call a witness," *Rippo v. State*, 113 Nev. 1239, 1253, 946 P.2d 1017, 1026 (1997), we conclude that the State's vague claims that the evidence was undisputed does not amount to such a reference. If there was no error, there was no plain error. *See Mclellan*, 124 Nev. at 267, 182 P.3d at 109 ("In conducting plain error review, we must examine whether there was error, whether the error was plain or

---

[3]Bai additionally contends that it is improper for counsel to characterize a witness as a liar. We have determined that calling the defendant a liar during closing argument is not reversible error when evidence of guilt is overwhelming. *See Skiba v. State*, 114 Nev. 612, 614-15, 959 P.2d 959, 960-61 (1998), *disapproved of on other grounds by Jackson v. State*, 128 Nev., Adv. Op. 55, 291 P.3d 1274, 1282 (2012). Here, the evidence of guilt is overwhelming because of scientific, video surveillance and eyewitness evidence supporting Bai's convictions.

 

clear, and whether the error affected the defendant's substantial rights." (internal quotations omitted)).

Bai also contends that the following comments, made by the State during the penalty phase, were improper:

1) And you know, I took somewhat of an offense of it in guilt phase when [defense counsel] got up and said, hey, it's a tough case for the State, don't blame them but, hey, they just couldn't make it because it was kind of—it was almost funny.

2) The State's not the only people being manipulated. His own mother, the witnesses, these three guys, Dr. Wen, they're manipulated by their guy too.

3) [C]onsidering how many people he's killed and he did it for a living.

4) What else do you know about Ying Chen? Could somebody just please admit that they know who Brother Three is in this case? Is that ever going to happen in this case? I mean, I thought for sure by the time Ying Chen got up there.

> In *State v. Green*, we held:

> The prosecutor ha[s] a right to comment upon the testimony and to ask the jury to draw inferences from the evidence, and has the right to state fully his views as to what the evidence shows. If the prosecutor's reasoning is faulty, such faulty reasoning is subject to the ultimate consideration and determination by the jury.

81 Nev. 173, 176, 400 P.2d 766, 767 (1965) (internal citation omitted).

Here, with exception to the third remark, the State's comments were merely an expression of its views based on the evidence.[4] As to the third comment, the defense did not object, and thus our review is for plain error. And, although references to past criminal history generally constitute reversible error, *Porter v. State*, 94 Nev. 142, 149, 576 P.2d 275, 279 (1978), under our plain error review, we conclude the evidence of guilt is overwhelming, and thus reversal is not warranted, *see Skiba*, 114 Nev. at 614, 959 P.2d at 960 (1998) (determining that a prosecutor's improper comment did not warrant reversal where evidence of guilt was overwhelming).

*Prosecution consulting with witness*

Jian Guo was a prosecution witness, who was standing near Bai and Li prior to Bai's attack, and who was also stabbed by Bai as Li attempted to escape. During Guo's redirect examination, as Guo testified to why Bai may have attacked Li, an interpreter translated the phrase "wan zi" to mean "return the money" or "return the debt." In contrast, the State asserted that the witness was saying "calm down." After a recess, Bai's counsel informed the court that the State conferred with Guo and several of the interpreters. Bai argued that the State was coaching Guo. The district court determined that the consultation was for clarification, and proceeded with trial.

---

[4]We additionally note that Bai's claims that the State improperly referred to him as a "hitman" and improperly referred to Li's death as a "contract killing," were an allowable expression of the State's view of the case.

On appeal, Bai contends that the State's conversation with Guo was prosecutorial misconduct because the conversation impacted the ascertainment of truth. It is generally acceptable for the prosecution to consult with its witness during recess. *See, e.g., United States v. Malik*, 800 F.2d 143, 148-49 (7th Cir. 1986) (finding no error where witness made a substantive correction to testimony after prosecutor privately conferred with witness during recess without authorization from trial court); *State v. Delarosa–Flores*, 799 P.2d 736, 737-38 (Wash. Ct. App. 1990) (holding no abuse of discretion in allowing recess conference between prosecutor and victim even though victim changed testimony after conference because opposing counsel could have attacked that change on cross-examination). Here, we conclude that the district court did not abuse its discretion by allowing the State to consult with Guo during the recess, especially considering that the content of the conversation included a translation issue, not a substantive change in Guo's testimony.[5]

*Juror misconduct*

Juror fourteen was a Mandarin and Cantonese interpreter. During Guo's testimony, frustrated with the court interpreters, the juror blurted out his own translation of a statement made by Guo. After Bai objected and moved for a new trial, the district court removed the juror. Bai contends that the district court abused its discretion by refusing to

_____

[5]In addition, the district court was within its discretion to change the record to reflect the true translation. *See Int'l Fid. Ins. Co. v. State*, 114 Nev. 1061, 1062, 967 P.2d 804, 805 (1998) ("The district court has broad discretion in addressing its internal matters."); *Riley v. State*, 83 Nev. 282, 285, 429 P.2d 59, 62 (1967) ("[T]he trial court must be accorded discretion to handle emergency situations as they arise during trial.").

grant a new trial based on the juror misconduct. The State contends that the misconduct was not prejudicial and therefore does not warrant reversal.

"A denial of a motion for a new trial based upon juror misconduct will be upheld absent an abuse of discretion by the district court." *Meyer v. State*, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003). "Nonetheless, [n]ot every incidence of juror misconduct requires the granting of a motion for [a] new trial." *Id.* at 562, 80 P.3d at 453 (alterations in original) (internal quotations omitted). The facts of each case and "the degree and pervasiveness of the prejudicial influence" are essential to the determination. *Id.* If a reasonable probability exists that a juror's misconduct influenced the verdict, then the conduct was prejudicial. *Id.* at 564, 80 P.3d at 455.

In this case, juror fourteen's interjection during Guo's testimony that the true translation was that Li was "shouting" and grabbing Guo, and not that Li "called" Guo while grabbing him, is highly unlikely to have influenced the verdict. Guo was testifying to what occurred just before Bai stabbed Li. Guo explained that Li grabbed and moved him in front of Bai while calling (or shouting) his name. We conclude that the difference in whether Li called or shouted Guo's name before he was stabbed has no bearing on whether Bai committed any of the crimes for which he was convicted. Therefore, the juror misconduct was not prejudicial and the district court did not abuse its discretion by denying Bai's motion for a new trial.

*Juror question*

Bai contends that he was prejudiced when the court asked a juror question of Detective Yu regarding whether it is common within

Asian gangs to hold family members captive. Bai's counsel objected to this question as irrelevant. However, we conclude that the district court was within its discretion to ask this juror question after taking certain procedural safeguards to minimize any prejudice. *See Flores v. State*, 114 Nev. 910, 913, 965 P.2d 901, 902 (1998) ("[A]llowing juror-inspired questions in a criminal case is not prejudicial per se, but is a matter committed to the sound discretion of the trial court. To minimize the risk of prejudice, however, the practice must be carefully controlled by the court. Accordingly, inclusion of juror questions must incorporate certain procedural safeguards to minimize the attendant risks.") (internal citation omitted). Moreover, Detective Yu's answer that kidnapping is not an everyday occurrence and is case specific, helped quell any prejudice arising from the question.

*Witness intimidation*

Bai also argues that the district court erred by allowing the State to elicit testimony suggesting that he intimidated witnesses. As in *Lay*, we conclude that no testimony was elicited that suggested the witnesses were directly intimidated by Bai. 110 Nev. at 1193-94, 886 P.2d at 450-51.

*Excited utterance exception to the hearsay rule*

Bai also claims that the district court abused its discretion by admitting Li's statements about the debt under the excited utterance exception to the hearsay rule. We conclude that the district court did not abuse its discretion because Li made the statements while he was still under the stress of excitement after Bai beat him at the market. *See* NRS 51.095 (providing that an excited utterance is "[a] statement relating to a




startling event or condition made while the declarant was under the stress of excitement caused by the event or condition").

*Letter from Bai to his mother*

Bai asserts that the district court abused its discretion by allowing a letter Bai wrote to his mother to be admitted and translated by Pei. However, Bai did not object when the State moved to admit the letter. Under plain error review, we conclude that the district court did not abuse its discretion by allowing Bai's letter to his mother, written in Chinese while he was incarcerated, to be admitted. The letter was more probative than prejudicial, *see* NRS 48.035(1), and demonstrated consciousness of guilt. *See Abram v. State*, 95 Nev. 352, 356, 594 P.2d 1143, 1145 (1979) ("Declarations made after the commission of the crime which indicate consciousness of guilt, or are inconsistent with innocence, or tend to establish intent may be admissible."). Additionally, although Bai's counsel objected to Pei translating portions of the letter in general, and objected after each translation with which he disagreed, Pei was not acting as a court interpreter, and thus was not required to meet the court interpreter qualifications under NRS 50.054.[6] Moreover, the court interpreters clarified the minimal translation inconsistencies that arose during Pei's testimony, and Bai's counsel had an opportunity to address any misinterpretations during cross-examination. Therefore, we are persuaded that the district court did not abuse its discretion by admitting the letter and allowing Pei to translate parts thereof.

---

[6]Court interpreters had also made available a written translation prior to Pei's testimony.

 

*Exclusion of testimony about Li's bodyguards*

Bai claims that the district court abused its discretion by excluding as hearsay testimony about Li's bodyguards. We conclude that the district court did not abuse its discretion by excluding testimony about Li's bodyguards. During a bench conference, Bai's counsel essentially admitted to the court that he was attempting to elicit hearsay. Consequently, the district court properly excluded the testimony. *See* NRS 51.065(1) (hearsay statements are generally inadmissible).[7] Based on the foregoing, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

---

[7]Bai's final contentions are that the district court abused its discretion by giving the "equal and exact justice" jury instruction and that cumulative error warrants reversal. We conclude that these arguments lack merit and thus do not warrant reversal.

cc: Hon. Michael Villani, District Judge
McLetchie Shell LLC
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk