THE STATE OF NEVADA, Appellant, *v.*
KATHERINE L. SMITH, Respondent.

No. 18955

June 1, 1989                                     774 P.2d 1037

---

[Rehearing denied September 28, 1989]

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, *Sandra A. Unsworth,* Deputy District Attorney, and *Larry Guy Sage,* Deputy District Attorney, Washoe County, for Appellant.

*Houston & Freeman,* Reno, for Respondent.

# OPINION

*Per Curiam:*

Respondent Katherine Smith was arrested in 1987 for driving under the influence of alcohol for the third time. Although Smith initially told Gary Quam, the arresting officer, that she would not submit to a chemical sobriety test, after some discussion with the officer, she eventually changed her mind and agreed to take a breath test. Prior to trial, Smith filed a motion to suppress the results of this test, and the district court granted the motion.

In 1986, after her second arrest for drunk-driving, Smith pleaded guilty to a charge of first-offense driving under the influence. After her 1987 arrest, Smith also filed a motion to suppress this conviction, arguing that the State could not use the 1986 conviction to enhance her 1987 charge into a third-time, felony offense. The district court granted this motion as well.

The State appeals on the grounds that the district court abused its discretion by granting Smith's motions to suppress. The State correctly argues that the district court abused its discretion when it suppressed the results of Smith's breath test. However, the district court properly suppressed Smith's 1986 conviction.

Smith was under arrest when Quam began to question her during the ride to the police station. At no time did Quam read the *Miranda* warnings to Smith. Moreover, before the ride began, Smith, under her own volition, demanded to speak to her attorney.

However, during the drive to the jail, Officer Quam continued to question Ms. Smith, who was visibly upset. Quam asked Smith if she had any prior drunk-driving convictions, and Smith responded that she had one prior conviction. Quam responded that a second drunk-driving conviction "was not that big a deal" in Nevada, and encouraged Smith to take a breath test. Quam informed Smith that for her second drunk-driving offense, she would only receive a maximum six months imprisonment and a $500 fine.

Smith testified that as Quam continued to question her, she became more upset and confused. Smith believed that she would receive harsher treatment if she continued to refuse to submit to the chemical sobriety test. When they reached the jail, Quam asked Smith again whether she wanted to take a breath test. This time, Smith agreed to take the test. In its order granting Smith's

motion to suppress the results of her breath test, the district court concluded that because Officer Quam's "coercive conduct" vitiated Smith's consent to the test, the police obtained her breath sample illegally.

Smith was entitled to the *Miranda* warnings after Quam stopped her, administered the field sobriety tests, and placed her under arrest. Berkemer v. McCarty, 468 U.S. 420, 434 (1984). Moreover, once Smith asked to speak to her attorney, all but routine discussion between Quam and Smith should have ceased. Miranda v. Arizona, 384 U.S. 436, 474 (1966). Therefore, Officer Quam's performance fell below the standard for proper police procedures.

However, the district court correctly observed that violations of the *Miranda* procedures result only in the suppression of compelled testimonial evidence. Schmerber v. California, 384 U.S. 757, 764 (1966); McCharles v. State, Dep't of Mtr. Vehicles, 99 Nev. 831, 834, 673 P.2d 488, 490 (1983). The Fifth Amendment does not bar the forced production of "real" or "physical" evidence, such as blood or breath samples. *McCharles,* 99 Nev. at 834, 673 P.2d at 490. Therefore, Officer Quam's failure to "Mirandize" Smith cannot serve as a basis for suppressing the results of her breath samples. *Id.*

Moreover, although Quam did not first obtain a warrant before administering the breath test, the Fourth Amendment does not prohibit such warrantless seizures because evidence such as breath samples may be lost if not immediately seized. *Schmerber,* 384 U.S. at 770-772. Since the court could not base the suppression of the breath test results on Fourth, Fifth or Sixth Amendment violations,[1] it used the language of Nevada's Implied Consent Laws, as well as case law, to support its conclusions.

The district court suppressed the breath test results because, in its opinion, Officer Quam's "coercive" conduct vitiated Smith's eventual consent to the test. According to NRS 484.383(8), if a driver detained under suspicion of operating a vehicle while under the influence of alcohol refuses to consent to a chemical

---

[1]Smith did not speak to her attorney before submitting to the breath test. However, the administration of a chemical sobriety test is not a "critical stage" within Sixth Amendment right to counsel analysis because the absence of the accused's attorney should not affect his or her right to a fair trial. *McCharles,* 99 Nev. at 833-834, 673 P.2d at 489. Therefore, the State did not abrogate Smith's Sixth Amendment right to counsel when it administered the breath test before she consulted her attorney. *Id.*

sobriety test, "none may be given." The district court reasonably suggested that this restraint on a police officer's ability to forcibly administer a sobriety test furthers the legislature's desire to avoid physical confrontations between law enforcement officers and drivers suspected of being intoxicated. To serve that end, the law recognizes the driver's right to refuse his consent, but penalizes him for exercising that right by revoking his license. NRS 484.384(1), (2). The fact of his refusal can be introduced against him in an administrative or criminal proceeding. NRS 484.389(1). "By striking this balance, the statute motivates drivers to take the test, but does so without resorting to physical compulsion." State v. Hitchens, 294 N.W.2d 686, 688 (Iowa 1980).

Thus, the district court held that the legislature gave Nevada motorists the statutory right to withdraw their consent to chemical sobriety tests after being informed of the Implied Consent Law. To be valid, consent must be voluntary, and not the product of coercion. Davis v. State, 99 Nev. 25, 27, 656 P.2d 855, 856 (1983). "[V]oluntariness is a question of fact to be determined from the totality of the surrounding circumstances." Id.

The district court ruled that the State failed to meet its burden of proving the voluntariness of Smith's eventual consent by clear and convincing evidence. Sparkman v. State, 95 Nev. 76, 79, 590 P.2d 151, 154 (1979). Specifically, the court held that Officer Quam, "through guile and psychological coercion," pressured Smith into changing her mind. The court found that Smith's consent germinated from implied threats of harsher consequences if she did not cooperate by taking the test, "a misapprehension of the law created by Quam." Therefore, it concluded that Smith's consent was a product of trickery and subtle coercion, not free will. We disagree.

We construe Nevada's Implied Consent Laws liberally in order to further the legislative policy of removing intoxicated drivers from our highways. Davis, 99 Nev. at 27, 656 P.2d at 856. In Davis, the appellant was injured, intoxicated, and distraught when he expressed his consent to a blood alcohol test. Nevertheless, we held that Davis' consent was freely and voluntarily given. Id. at 28, 656 P.2d at 857. In the instant case, we do not find that Officer Quam's conversation with Smith following her arrest was so onerous as to be coercive. Accordingly, substantial evidence does not support the district court's holding that Smith's consent to the chemical sobriety test was involuntarily given. Therefore, the district court abused its discretion when it suppressed the results of Smith's test.

The State argues that the district court erred when it ordered

the suppression of Smith's 1986 Nevada drunk-driving conviction for the purpose of elevating her 1987 charge to a felony. The State contends that, since Smith's 1986 conviction was in fact her second offense, it may properly use the 1986 conviction to enhance the most recent offense to felony status. We disagree.

When determining whether the State fulfilled its part of a plea bargain, we hold the State to "the most meticulous standards of promise and performance." Van Buskirk v. State, 102 Nev. 241, 243, 720 P.2d 1215, 1216 (1986). Any violation of the terms or "the spirit" of the plea bargain demands reversal. Id.

When Smith pleaded guilty to driving under the influence in 1986, the Reno city attorney informed the district court judge that "the defendant is going to be changing her plea to guilty to first-time DUI." The district court accepted her plea and "based on the negotiations had between the attorneys," imposed a sentence commensurate with that indicated for first-time drunk-driving offenders by NRS 484.3792(1).[2]

The State may use prior misdemeanor convictions for driving under the influence to enhance the penalties established by NRS 484.3792. Koenig v. State, 99 Nev. 780, 784, 672 P.2d 37, 40 (1983). However, the record indicates that Smith understood that the State would treat her as a first offender in connection with the 1986 charge. The spirit of constitutional principles does not support the subsequent use of the 1986 conviction for enhancement purposes without appropriate clarification and warning on the occasion of the 1986 plea bargain.

Nothing in the record indicates that, in 1986, the State advised Smith that after receiving treatment as a first-offender, the 1986 conviction would thereafter revert to a second offense in the event of further drunk-driving convictions. Moreover, we assume that Smith's 1986 guilty plea was induced, at least in part, by the knowledge that a first-time offense, for purposes of minimizing criminal penalties for future drunk-driving convictions, was preferable to a second offense. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971).

Courts specifically enforce plea bargains when enforcement will implement the reasonable expectations of the parties without binding the trial judge to an unsuitable disposition. *Van Buskirk,*

---

[2]Since Smith's counsel advised her of her constitutional rights at that time, the record indicates that Smith's 1986 guilty plea comported with "the spirit of constitutional principles," and therefore, was valid. Koenig v. State, 99 Nev. 780, 789, 672 P.2d 37, 43 (1983).

102 Nev. at 244, 720 P.2d at 1216-1217. In this case, because it was reasonable for the parties to expect that Smith's 1986 conviction would be treated as a first offense in all respects, including penalty enhancement for future drunk-driving convictions, enforcement of the plea agreement is appropriate.

Thus, the use of Smith's 1986 drunk-driving conviction in order to enhance her 1987 charge to felony status would violate the spirit of the plea bargain entered into in 1986 between Smith and the Reno city attorney. *See Van Buskirk,* 102 Nev. at 243, 720 P.2d at 1216. Therefore, the district court properly suppressed the 1986 conviction.

Accordingly, we reverse the district court's suppression of the results of Smith's breathalyzer test. We affirm the trial court's suppression of the use of Smith's 1986 conviction as a penalty enhancer.