**130 Nev., Advance Opinion 85**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL DWAYNE BYARS, A/K/A
MARCUS JONES, A/K/A JEFFERY
ROSHAWE BYARS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61348

**FILED**

OCT 16 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of prohibited possession of a firearm by an unlawful user of a controlled substance, addict, or felon; using or being under the influence of a controlled substance; and two counts of battery by a prisoner in lawful custody or confinement. Tenth Judicial District Court, Churchill County; Robert E. Estes, Judge.

*Affirmed in part, reversed in part, and remanded.*

Steve E. Evenson, Lovelock,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Arthur E. Mallory, District Attorney, and Benjamin D. Shawcroft, Deputy District Attorney, Churchill County,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PARRAGUIRRE, J.:

In this appeal, we are asked to determine whether the warrantless, forced blood draw on a driver suspected of driving under the

influence of a controlled substance violates the Fourth Amendment. In light of the U.S. Supreme Court's decision in *Missouri v. McNeely*, we conclude that the natural dissipation of marijuana in the blood stream does not constitute a per se exigent circumstance justifying a warrantless search. 569 U.S. ___, ___, 133 S. Ct. 1552, 1568 (2013) (plurality opinion). We further conclude that despite NRS 484C.160, the state's implied consent statute, the blood draw in this case was unlawful because appellant did not submit to the blood draw, and NRS 484C.160(7), which permits officers to use force to obtain a blood sample from a person, is unconstitutional because it permits officers to conduct a search without a warrant, valid consent, or another exception to the warrant requirement. Nevertheless, we conclude that the blood draw was taken in good faith, thus the exclusionary rule does not apply. We therefore conclude that the Fourth Amendment violation does not warrant reversal of the judgment of conviction.

We do, however, reverse the portion of the judgment of conviction finding the defendant guilty on the count of unlawful user of a controlled substance in possession of a firearm. The district court merged that offense with the felon-in-possession count for sentencing and the State concedes on appeal that the district court should not have adjudicated the defendant guilty on both counts.

## FACTS

On January 12, 2012, Nevada Highway Patrol Trooper William Murwin pulled Michael Byars over for speeding on U.S. Highway 50 in Churchill County. Upon approaching Byars, Trooper Murwin smelled marijuana. Byars admitted to having smoked marijuana five hours before. Trooper Murwin performed field sobriety tests and arrested

SUPREME COURT
OF
NEVADA

(O) 1947A

Byars on the belief that he was under the influence of a controlled substance.

Trooper Murwin and another trooper performed an inventory search of Byars' car and found a handgun in a storage area of the car. Trooper Murwin then read Byars Nevada's implied consent law and informed Byars that he would perform a blood test. Byars refused to submit to the test, but cooperated with Trooper Murwin until they reached the hospital and the blood draw was actually performed. During the blood draw, Byars struggled, striking Trooper Murwin in the head with his elbow and a sheriff's deputy in the abdomen and side with his legs. The blood draw showed that Byars had THC (tetrahydrocannabinol, the psychoactive constituent of marijuana) in his blood.

The State charged Byars with being an unlawful user of a controlled substance in possession of a firearm, a category B felony under NRS 202.360(1); unlawful use or being under the influence of a controlled substance, a category E felony under NRS 453.411(3)(a); two counts of battery by a prisoner in lawful custody or confinement, a category B felony under NRS 200.481(2)(f); and being a felon in possession of a firearm, a category B felony under NRS 202.360(1)(a).

The district court bifurcated Byars' trial for the first four counts and the fifth count, felon in possession of a firearm. During the portion of Byars' trial on the felon-in-possession charge, the State introduced two judgments of conviction for Marcus Jones and then introduced testimony from Byars at a prior justice court appearance that Marcus Jones was his alias and that those convictions were his. The State did not introduce additional evidence identifying Byars as Marcus Jones.

Byars was convicted of all counts, and the district court merged Count 1 with Count 5 for purposes of sentencing, imposing a single sentence. In addition, Byars was convicted in a prior proceeding of driving under the influence of a controlled substance, a misdemeanor.

On appeal, Byars argues that: (1) the warrantless blood draw violated the Fourth Amendment prohibition on unreasonable searches and seizures; (2) the "unlawful user of, or addicted to, any controlled substance" element of unlawful possession of a firearm under NRS 202.360(1)(c) cannot be satisfied by proving a single use of a controlled substance; (3) the State did not present sufficient evidence to establish the *corpus delicti* of the felon-in-possession charge; (4) the convictions for misdemeanor DUI and the felony under-the-influence charge violated the Double Jeopardy Clause; (5) the State did not present sufficient evidence to support the battery convictions; (6) Byars was not in custody when the batteries occurred; (7) the district court abused its discretion by denying Byars' motion to sever the charges; and (8) the prosecutor's remarks during closing argument prejudiced Byars' right to a fair trial.

## DISCUSSION

*The warrantless blood draw violated the Fourth Amendment*

Byars argues that, in light of the U.S. Supreme Court's decision in *Missouri v. McNeely*, 569 U.S. ___, ___, 133 S. Ct. 1552, 1568 (2013) (plurality opinion), the warrantless blood draw violated the Fourth Amendment prohibition on unreasonable searches and seizures. The Fourth Amendment to the United States Constitution and Article 1, Section 18 of the Nevada Constitution protect individuals from unreasonable searches and seizures. A warrantless search is reasonable only where it falls within a recognized exception. *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1558. The State argues that the warrantless search in

SUPREME COURT
OF
NEVADA

(O) 1947A

4

this case was reasonable under either of two exceptions: exigent circumstances and consent.

*The exigent circumstances exception to the warrant requirement does not apply*

The exigent circumstances exception to the warrant requirement applies where "'the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.'" *Id.* at ___, 133 S. Ct. at 1558 (quoting *Kentucky v. King*, 563 U.S. ___, ___, 131 S. Ct. 1849, 1856 (2011)). Applying that exception, the U.S. Supreme Court upheld the constitutionality of a warrantless blood draw in *Schmerber v. California*, where an officer reasonably believed that the delay involved in securing a warrant would result in the dissipation of alcohol in a driver's blood. 384 U.S. 757, 772 (1966). Some courts "interpreted *Schmerber* as concluding that the naturally rapid dissipation of alcohol in the bloodstream creates an emergency that justifies a warrantless blood draw." *State v. Shriner*, 751 N.W.2d 538, 546-47 & 547 n.11 (Minn. 2008) (discussing majority and minority views of *Schmerber*), *abrogated by McNeely*, 569 U.S. at ___, 133 S. Ct. at 1568; *see also State v. Smith*, 105 Nev. 293, 296, 774 P.2d 1037, 1039 (1989) (citing *Schmerber* in support of the conclusion that warrantless administration of a breath test did not violate the Fourth Amendment "because evidence such as breath samples may be lost if not immediately seized"). Other courts, however, understood *Schmerber* to require a review of the totality of the circumstances, not just the rapid dissipation of alcohol, to determine whether there was an exigency. *See, e.g., State v. Rodriguez*, 156 P.3d 771 (Utah 2007). The Supreme Court recently resolved this split of authority in *McNeely*, holding that the natural dissipation of alcohol from the bloodstream is a relevant

consideration in an exigent circumstances analysis but is not a per se exigent circumstance that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood draws in drunk-driving cases. 569 U.S. at ___, 133 S. Ct. at 1568.

The *McNeely* Court reasoned that a per se rule of exigency based on the natural dissipation of alcohol is inappropriate because it would apply the exception in circumstances that are inconsistent with the policy justifications that make a warrantless search based on an exigency reasonable. *Id.* at ___, 133 S. Ct. at 1560-63. The Court observed that a warrantless search in exigent circumstances is reasonable because "'there is compelling need for official action and no time to secure a warrant.'" *Id.* at ___, 133 S. Ct. at 1559 (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). Accordingly, there is no justification for applying the exigent circumstances exception when "officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search." *Id.* at ___, 133 S. Ct. at 1561.

The Court reiterated that the question of the reasonableness of a warrantless search should be answered on a case-by-case basis considering the totality of the circumstances. *Id.* at ___, 133 S. Ct. at 1563. The case, however, did not lend itself to development of the various factors that might inform a decision about the reasonableness of a warrantless blood draw because Missouri had not offered any argument based on the totality of the circumstances, such as whether a warrant could be obtained within a reasonable amount of time. *Id.* at ___, 133 S. Ct. 1568 (explaining that "the arguments and the record [did] not provide the Court with an adequate analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining

the reasonableness of acting without a warrant"). Because the totality of the circumstances was not litigated in the case, the Court affirmed the Missouri Supreme Court's decision that there were no exigent circumstances and that the warrantless blood draw was unconstitutional. *Id.*

Although *McNeely* involves alcohol intoxication and this case involves marijuana, we conclude that the reasoning of *McNeely* applies here and that, like the natural dissipation of alcohol, the natural dissipation of THC from the blood does not create a per se exigency. Looking to the totality of the circumstances, we conclude that the State failed to establish exigent circumstances to justify the warrantless blood draw. First, the State did not demonstrate that waiting for a warrant would result in losing evidence of Byars' intoxication. In fact, there is reason to believe that traces of marijuana in the bloodstream would take longer to dissipate than alcohol, thus the fact that Byars was suspected of marijuana use instead of alcohol use militates in favor of finding that there were no exigent circumstances justifying the warrantless search.[1] *See State v. Jones*, 111 Nev. 774, 776, 895 P.2d 643, 644 (1995) (noting that cocaine had a slower dissipation rate than alcohol in holding that a warrant was required before performing a blood test on a pedestrian suspected of being under the influence of a controlled substance).

_____

[1]The State's toxicologist testified that Byars had 4.5 nanograms of THC per milliliter of blood, which is 2.5 nanograms higher than the statutory amount for intoxication. NRS 484C.110(3)(g). According to the toxicologist, 4.5 nanograms "probably represent[s] the tail-end of the smoking." Even though Byars had stated that he smoked five hours prior, there are no facts in the record establishing that the evidence would dissipate significantly before a warrant could be obtained.

Furthermore, the facts in the record suggest that time was not a factor in the officer's decision to take Byars' blood without a warrant. According to Trooper Murwin, he waited about 30 minutes before a second K-9 officer arrived to sniff the car for drugs, then drove Byars to a hospital to have the blood collected, which Trooper Murwin acknowledged to be a lengthy process. There is no indication in the record that Trooper Murwin was prevented from seeking a warrant telephonically or that time was of the essence in securing the blood. There is also no indication in the record that the length of the warrant process would endanger the evidence Trooper Murwin sought to collect. And we have held that delays in securing warrants do not factor into the exigent circumstances analysis. *Jones*, 111 Nev. at 776, 895 P.2d at 644.[2] Accordingly, we conclude that the warrantless blood draw in question was not justified by the exigent circumstances exception to the warrant requirement.

*The consent exception to the warrant requirement does not apply*

The State argues that even if the natural dissipation of THC does not create an exigent circumstance, the search was reasonable based on consent as provided by the implied consent statute, NRS 484C.160(1). Consent to a search also provides an exception to both the Fourth Amendment's probable cause and warrant requirements. *Schneckloth v.*

---

[2]Byars argues that *Jones* supports this court creating a per se warrant requirement where controlled substance use is suspected due to the slower dissipation rate of some controlled substances. Although we recognize that *Jones* supports our conclusion that a warrant was required in this particular case, we note that a case-by-case examination of the totality of the circumstances is still the appropriate way to determine whether a warrant is required, especially given the lack of any empirical data on the dissipation rate of THC in this case.

*Bustamonte*, 412 U.S. 218, 219 (1973). Byars argues that he did not consent and that NRS 484C.160(7), which allows a police officer to use reasonable force to take a driver's blood where the officer has a reasonable belief that the driver was under the influence of alcohol or a controlled substance, is unconstitutional.

We review the constitutionality of a statute de novo. *Sheriff v. Burdg*, 118 Nev. 853, 857, 59 P.3d 484, 486 (2002). We presume that a statute is constitutional, thus the party challenging a statute has a heavy burden to show that it is unconstitutional. *Id.* We have never addressed whether a forced blood draw taken pursuant to NRS 484C.160(7) is constitutional.

According to the State, even though Byars refused to submit to the blood draw, he had consented to it by choosing to drive on Nevada roads. NRS 484C.160(1) provides that "any person who drives or is in actual physical control of a vehicle on a highway or on premises to which the public has access shall be deemed to have given his or her consent to an evidentiary test of his or her blood, urine, breath or other bodily substance" if a police officer has reasonable grounds to believe that the person was driving or in actual physical control of a vehicle while under the influence of alcohol or a controlled substance or was engaging in other conduct prohibited by certain statutes. If a driver does not submit to a test and the police officer has reasonable grounds to believe that the person was under the influence of alcohol or a controlled substance or engaging in other specified conduct, "the officer may direct that reasonable force be used to the extent necessary to obtain samples of blood from the person to be tested." NRS 484C.160(7).

The State's argument that consent is valid based solely on Byars' decision to drive on Nevada's roads is problematic because the statute makes the implied consent irrevocable. A necessary element of consent is the ability to limit or revoke it. *Florida v. Jimeno*, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents."); *see also United States v. McMullin*, 576 F.3d 810, 815 (8th Cir. 2009) (holding that the occupant of a house "must make an unequivocal act or statement to indicate the withdrawal of the consent"). Just as consent must be freely given, a person must be free to withdraw or limit it. *United States v. McWeeney*, 454 F.3d 1030, 1035-36 (9th Cir. 2006) (holding that law enforcement officers may not "coerce a citizen into believing that he or she had no authority to enforce" the right to withdraw consent).

A number of jurisdictions have upheld implied consent statutes where refusing to submit to a blood test results in criminal or administrative penalties. *See, e.g., People v. Harris*, 170 Cal. Rptr. 3d 729, 734 (Ct. App. 2014) (upholding the state's implied consent statute, which attaches a criminal penalty to refusal, noting that "it is no great innovation to say that implied consent is legally effective consent, at least so long as the arrestee has not purported to withdraw that consent"); *State v. Brooks*, 838 N.W.2d 563, 570, 572-73 (Minn. 2013) (concluding that the state's implied consent statute, which criminalizes refusal to consent, is constitutional, and that the decision to submit to the test "is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test"). The critical distinction between such jurisdictions and Nevada is that NRS 484C.160(7) allows a police officer to force a blood draw where a driver refuses to submit to a test, thus a Nevada driver who

falls under the criteria set forth in NRS 484C.160(7) is not given a choice between submitting to a test or facing a penalty. We have found no jurisdiction that has upheld an implied consent statute that allows an officer to use force to obtain a blood sample upon the driver's refusal to submit to a test.

The State argues that the plurality in *McNeely* tacitly approved of Nevada's implied consent statute as an alternative to the exigent circumstances justification for a warrantless blood draw. The plurality in *McNeely* noted that in order to serve the important interest of preventing impaired driving, all 50 states "have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the [s]tate, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1566. "Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most [s]tates allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id.* at ___, 133 S. Ct. at 1566. At no point does the plurality appear to retreat from the warrant requirement for nonconsensual blood draws, and the Court's description of implied consent laws does not appear to endorse our particular statutory scheme.

In fact, the U.S. Supreme Court relied on *McNeely* in reversing a Texas appellate court's determination that a forced blood draw was constitutional based solely on consent derived from an implied consent statute. *Aviles v. Texas*, 571 U.S. ___, ___, 134 S. Ct. 902, 902 (2014), *vacating Aviles v. State*, 385 S.W.3d 110 (Tex. App. 2012). The defendant

in *Aviles* was stopped for suspicion that he was driving under the influence. *Aviles v. State*, 385 S.W.3d at 112. Upon learning that Aviles had two prior DUI convictions, the officer requested a breath or blood specimen which Aviles refused. *Id.* The officer compelled a blood draw under Tex. Transp. Code Ann. § 724.012(b) (West 2011), which provides that an officer "'shall require the taking of a specimen of the person's breath or blood'" if the suspect has at least two prior DUI convictions. *Id.* at 112-13 (quoting Tex. Transp. Code Ann. § 724.012(b) (West 2011)). The Texas Court of Appeals considered the defendant's appeal prior to the *McNeely* decision, and concluded that such a search without a warrant was justified based on consent alone, relying on prior Texas precedent. *Id.* at 115-16.

Aviles filed a petition for a writ of certiorari with the U.S. Supreme Court. After issuing *McNeely*, the U.S. Supreme Court granted certiorari and issued a brief order vacating the Texas Court of Appeals' opinion and remanding "for further consideration in light of *Missouri v. McNeely*." *Aviles*, 571 U.S. at ___, 134 S. Ct. at 902. Although this very short order appears to hold limited precedential value on its own, it undermines support for the conclusion that consent alone is a viable justification for a warrantless search where the subject of the search does not have the option to revoke consent.

Thus, we conclude that NRS 484C.160(7) allows a police officer to engage in a warrantless, nonconsensual search in violation of the Fourth Amendment. The implied consent provision in NRS 484C.160(1) does not overcome the statute's infirmity because the statute does not allow a driver to withdraw consent, thus a driver's so-called consent

cannot be considered voluntary. Accordingly, we conclude that NRS 484C.160(7) is unconstitutional.

*The good-faith exception to the exclusionary rule applies*

The State argues that Trooper Murwin relied on the implied consent statute in good faith, thus suppression is not required. In *United States v. Leon*, the U.S. Supreme Court held that where the police rely in good faith on a warrant issued by a neutral magistrate, evidence seized pursuant to that warrant would not be suppressed. 468 U.S. 897, 919-20 (1984). The Court has also found such a good-faith exception where the police reasonably rely on a statute later found unconstitutional. *Illinois v. Krull*, 480 U.S. 340, 349-51 (1987). We conclude that the good-faith exception applies here.

The U.S. Constitution does not provide for exclusion of evidence obtained in violation of the Fourth Amendment. *Arizona v. Evans*, 514 U.S. 1, 10 (1995). Instead, the exclusionary rule is a judicial remedy designed to deter law enforcement from future Fourth Amendment violations. *Leon*, 468 U.S. at 906. Accordingly, "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918; *see also State v. Allen*, 119 Nev. 166, 172, 69 P.3d 232, 236 (2003) ("Exclusion is only appropriate where the remedial objectives of the exclusionary rule are served."). While *Leon* is applicable to situations where a police officer has an objectively reasonable good-faith belief in the validity of an improperly issued warrant, the U.S. Supreme Court extended that same logic to legislatures in *Krull*. Presuming that legislatures do not intentionally pass unconstitutional laws, the Court determined that a government agent was justified in relying on the presumption that a statute

authorizing warrantless administrative searches was constitutional. *Krull*, 480 U.S. at 349-51. The Court has also refused to apply the exclusionary remedy where a police officer relies in good faith on appellate precedent that is later overturned. *Davis v. United States*, 564 U.S. ___, 131 S. Ct. 2419, 2432-34 (2011).

We conclude that exclusion in the present case would not act as a deterrent to unconstitutional police conduct, thus the exclusionary remedy is not mandated. The record does not contradict the State's assertion that Trooper Murwin relied in good faith on the constitutional validity of NRS 484C.160, and such reliance appears reasonable, as prior to *McNeely*, the U.S. Supreme Court had upheld the constitutionality of warrantless blood draws under the exigent circumstances exception to the warrant requirement. *Schmerber v. California*, 384 U.S. 757, 772 (1966). While *McNeely* concluded that *Schmerber* did not create a per se exigency, Trooper Murwin relied on the presumptive constitutionality of the statute and prior U.S. Supreme Court precedent, thus the deterrent purpose of the exclusionary rule would not be served by excluding the evidence in this case. *See Allen*, 119 Nev. at 172, 69 P.3d at 236.[3]

*The district court erred by convicting Byars of being an unlawful user in possession of a firearm after merging the count with the conviction for felon in possession of a firearm*

Byars argues that a person cannot be convicted of being an unlawful user or addict in possession of a firearm under NRS 202.360(1)(c) where the State only proves a single use of a controlled substance. We

---

[3]Because the good-faith exception to the exclusionary remedy applies, we need not determine whether the admission of the blood draw evidence was harmless error beyond a reasonable doubt. *Chapman v. California*, 386 U.S 18, 24 (1967).

need not reach this issue. The district court merged the sentence for unlawful user in possession of a firearm with the sentence for felon in possession of a firearm but did not merge the underlying convictions. On appeal, the State concedes that the district court should not have found Byars guilty of being an unlawful user in possession of a firearm after merging the count with the conviction for felon in possession of a firearm. In light of the State's concession, we reverse the portion of the judgment of conviction adjudicating Byars guilty of being an unlawful user or addict in possession of a firearm and remand for the district court to correct the judgment of conviction. *See Hewitt v. State*, 113 Nev. 387, 391 & n.4, 936 P.2d 330, 333 & n.4 (1997) (reversing a conviction for a lesser-included offense where the district court did not merge the lesser offense with the greater offense but did not sentence the defendant for the lesser-included offense, and noting that because the defendant was not sentenced for the lesser-included offense, the effect of the reversal of the conviction should be to correct the judgment of conviction), *overruled on other grounds by Martinez v. State*, 115 Nev. 9, 12 n.4, 974 P.2d 133, 135 n.4 (1999). We therefore need not address Byars' argument that a single use does not justify a conviction under NRS 202.360(1)(c).

*The State adequately proved the corpus delicti of the felon-in-possession charge*

Byars argues that the State did not prove the *corpus delicti* of the felon-in-possession-of-a-firearm charge. We conclude that this argument is unpersuasive.

We have held that "[t]he *corpus delicti* of a crime must be proven independently of the defendant's extrajudicial admissions." *Doyle v. State*, 112 Nev. 879, 892, 921 P.2d 901, 910 (1996), *overruled on other grounds by Kaczmarek v. State*, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004).

At a minimum, this requires a prima facie showing by the State "'permitting the reasonable inference that a crime was committed.'" *Id.* (quoting *People v. Alcala*, 685 P.2d 1126, 1136 (Cal. 1984), *superseded by statute on other grounds as stated in People v. Falsetta*, 986 P.2d 182, 186 (Cal. 1999)).

Here, the State asserted that Byars went by the alias Marcus Jones and introduced two judgments of conviction from a Las Vegas district court for Marcus Jones, born on March 14, 1974. The State also introduced testimony from the court clerk for the Justice Court of New River Township that Byars told the court during his initial appearance that he was convicted in Las Vegas of those charges under the name Marcus Jones, and that he was born on March 14, 1974. The State then played the audio of that appearance for the jury.

As the record demonstrates, the admission by Byars during the initial appearance that he had identified himself as Marcus Jones, was born on March 14, 1974, and had been convicted of prior felonies in Las Vegas was corroborated by two judgments of conviction for a Marcus Jones, born on March 14, 1974, in Las Vegas. Accordingly, we conclude that the State provided prima facie evidence that supported a reasonable inference that the crime, felon in possession of a firearm, was committed. *See Doyle*, 112 Nev. at 892, 921 P.2d at 910.

*The convictions for misdemeanor DUI and felony being under the influence of a controlled substance do not violate the Double Jeopardy Clause*

Byars argues that his convictions for misdemeanor DUI and felony being under the influence of a controlled substance violated the Double Jeopardy Clause of the Fifth Amendment and that the convictions are redundant. We conclude that neither argument is persuasive.

SUPREME COURT
OF
NEVADA

(O) 1947A

*Double jeopardy*

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Williams v. State*, 118 Nev. 536, 548, 50 P.3d 1116, 1124 (2002) (alteration in original) (internal quotations omitted). The U.S. Supreme Court has held that "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

NRS 453.411 provides that it is unlawful to knowingly use or be under the influence of a controlled substance except in accordance with a legal prescription. A conviction for driving under the influence of a prohibited substance under NRS 484C.110(3) requires the State to prove that a person (1) drove or was in "actual physical control of a vehicle on a highway or on premises to which the public has access," (2) with an amount of a prohibited substance in his or her blood or urine, (3) that is equal to or greater than an amount of the prohibited substance found in NRS 484C.110(3) (for marijuana, this is 2 nanograms per milliliter of blood). NRS 484C.110(2) alternatively allows for a conviction where the person is under the influence of a controlled substance.

This court has held that a violation of NRS 484C.110 on the theory that an illegal amount of a controlled substance is found in the blood (referred to as a "per se violation") is a separate violation from driving a vehicle while impaired. *Williams*, 118 Nev. at 549, 50 P.3d at 1124. According to this court in *Williams*, "each of these subsections defines a separate offense for purposes of double jeopardy analysis." *Id.* Thus, we conclude that where the State secures a conviction for a per se

SUPREME COURT
OF
NEVADA

(O) 1947A

17

violation, as the State did here, the State is proving a separate element (a threshold amount of marijuana in the blood) than the under-the-influence element of NRS 453.411. For that count, the State introduced testimony that the level of marijuana in Byars' blood would cause a person to be impaired in addition to proving that Byars had the threshold statutory amount for a DUI conviction.

Accordingly, we conclude that the two convictions did not violate the Double Jeopardy Clause.

*Redundancy*

Byars argues that in addition to violating the Double Jeopardy Clause, the two convictions are redundant. Byars cites to a number of Nevada cases for the proposition that a defendant is not subject to multiple convictions for the same conduct. This court has disapproved of the "same conduct" theory, however, specifically mentioning the three cases cited by Byars in support of his argument. *Jackson v. State*, 128 Nev. ___, ___, 291 P.3d 1274, 1282 (2012) (naming *Salazar v. State*, 119 Nev. 224, 228, 70 P.3d 749, 751-52 (2003), *Skiba v. State*, 114 Nev. 612, 616, 959 P.2d 959, 961 (1998), and *Albitre v. State*, 103 Nev. 281, 283-84, 738 P.2d 1307, 1309 (1987), and overruling these cases and their progeny). In light of our prior disapproval, we conclude that Byars' argument in this regard lacks merit.

*Sufficient evidence supports the convictions for battery*

Byars argues that sufficient evidence did not support his two convictions for battery. Specifically, Byars argues that the State did not provide evidence that he intended to strike the two officers during the forced blood draw and the contact did not cause any injury to either the officers or their uniforms. We conclude that this argument is unpersuasive.

In reviewing the sufficiency of the evidence in a criminal case, we determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution. *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

Battery is "any willful and unlawful use of force or violence upon the person of another." NRS 200.481(1)(a). Looking to California, whose battery statute Nevada's is based upon, we have interpreted battery broadly to be "the intentional and unwanted exertion of force upon another, *however slight*." *Hobbs v. State*, 127 Nev. ___, ___, 251 P.3d 177, 179-80 (2011) (emphasis added). California has further clarified that battery is a general intent crime. *People v. Lara*, 51 Cal. Rptr. 2d 402, 405 (Ct. App. 1996). Thus, the prosecutor need only prove that "the defendant actually intend[ed] to commit a willful and unlawful use of force or violence upon the person of another." *Id.* (internal quotations omitted).

Here, the prosecution introduced evidence that Byars made clear before the blood draw that he would resist and that he stated, "Watch. Watch. I know what I can do. Watch." Byars flailed during the blood draw, striking Trooper Murwin and a sheriff's deputy who assisted in restraining Byars for the blood draw. While Byars contests some of the specific details of Trooper Murwin's testimony, he does not contest that he made contact with the officers. Furthermore, the fact that the blows did not result in injuries to the officers or their uniforms is not relevant to the question of whether a battery occurred. *Hobbs*, 127 Nev. at ___, 251 P.3d at 180. Thus, we conclude that the State has provided sufficient evidence to support the jury's verdict beyond a reasonable doubt that Byars

intentionally used force upon another, however slight. *Hobbs*, 127 Nev. at ___, 251 P.3d at 180; *McNair*, 108 Nev. at 56, 825 P.2d at 573.

*Byars was in custody when he committed the batteries*

Byars argues that he was not in lawful custody when the batteries were committed. We disagree.

A battery committed on a peace officer while in lawful custody or confinement is a felony under NRS 200.481. In the context of defining lawful custody or confinement under NRS 200.481, we have noted that a person is a prisoner "when one is '*held*' in custody under process of law or under lawful arrest." *Dumaine v. State*, 103 Nev. 121, 124, 734 P.2d 1230, 1232 (1987) (quoting NRS 193.022 and NRS 208.085). This requires a person to either submit to the control of an arresting officer or be taken and held in control. *Id.* Here, Trooper Murwin placed Byars under arrest, secured him in a restraining belt, and then transported him to the hospital against Byars' will. Accordingly, we conclude that Byars was in custody for the purposes of the battery enhancement.[4]

_____

[4]Byars also argues that his resistance to the officers was lawful because the blood draw was unconstitutional under *McNeely*. The only authority Byars cites for this proposition is *Rosas v. State*, 122 Nev. 1258, 1262, 147 P.3d 1101, 1104 (2006). In *Rosas*, the defendant argued that he was entitled to an instruction on self-defense for a charge of battery upon an officer. *Id.* We agreed that a defendant is entitled to such an instruction where there is some evidence to support it. *Id.* At no point did we decide the underlying factual issue of self-defense in *Rosas*, and in the present case, Byars did not seek any such instruction from the district court. Accordingly, we conclude that *Rosas* is inapposite and Byars' argument is otherwise without merit. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (noting that this court need not consider allegations of error not cogently argued or supported by any pertinent legal authority).

*The district court did not abuse its discretion by refusing to sever the first four counts*

Byars argues that the district court's denial of his motion to sever the first four counts prejudiced his right to a fair trial.

A district court has discretion to join or sever charges, and we review for harmless error a district court's misjoinder of charges. *Weber v. State*, 121 Nev. 554, 570-71, 119 P.3d 107, 119 (2005). NRS 173.115 provides that multiple offenses may be charged together where they are "[b]ased on the same act or transaction; or . . . [b]ased on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Byars cites *McIntosh v. State*, 113 Nev. 224, 227, 932 P.2d 1072, 1074 (1997), for the proposition that a motion to sever should be granted where the charges have doubtful relevance to each other. In *McIntosh*, we determined that the district court abused its discretion by allowing the State to introduce evidence that the defendant was in possession of a firearm when the only crime charged was possession or being under the influence of a controlled substance. *Id.* *McIntosh* did not involve a motion to sever, and there was no firearm-related charge.

Here, the district court bifurcated the felon-in-possession charge in order to prevent prejudice to Byars as a result of testimony about his prior felony convictions but refused to sever the remaining counts. The remaining counts (two battery-upon-an-officer counts, possession of a firearm while under the influence, and being under the influence) are all related to the same transaction or occurrence—specifically, Byars' marijuana use and the related efforts to secure a blood sample. Accordingly, we conclude that the district court did not abuse its discretion in refusing to sever those counts.

*Remarks during the State's closing argument were not prejudicial*

Byars argues that the State's remarks during closing argument were prejudicial and denied him a fair trial. Byars' counsel did not object to the State's remarks during trial. Accordingly, plain error review is appropriate. *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).

To determine if a prosecutor's misconduct was prejudicial, we examine whether a prosecutor's statements so infected the proceedings with unfairness as to result in a denial of due process. *Thomas v. State*, 120 Nev. 37, 47, 83 P.3d 818, 825 (2004). "The statements should be considered in context, and 'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.'" *Id.* (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "[P]rosecutors 'may not argue facts or inferences not supported by the evidence.'" *Id.* at 48, 83 P.3d at 825 (quoting *Williams v. State*, 103 Nev. 106, 110, 734 P.2d 700, 703 (1987)). The specific statements cited by Byars are as follows:

- "That's how dangerous the circumstance was. [The firearm] was loaded at that time."

- "[H]e's an unlawful user in possession of that firearm. Dangerous combination."

- "And just think of how dangerous it is with somebody under the influence of marijuana to be in possession of a firearm when an officer, who thought he was just giving a speeding ticket out, came up to that vehicle.

  How dangerous is that when he was impaired? When he was impaired, not thinking straight."

- In regard to the battery counts: "Who's looking after these people who are in custody? They need greater protection for the

dangerous circumstances that can be created by dangerous individuals."

- "What if in fighting he gets one—one of the officer's firearms to go off, kills somebody? Still inadvertent? Not a battery?"

None of these statements include any assertion of fact that is not supported by the record. The argument that the defendant was dangerous is well within bounds because the State appears to refer to the very dangers that justify the criminalization of the behaviors that the State alleged that Byars engaged in. Thus, given the nature of the statements and the high bar for overturning a jury verdict due to a prosecutor's statements at closing argument, we conclude that Byars was not denied a fair trial. *See Thomas*, 120 Nev. at 47, 83 P.3d at 825.

## CONCLUSION

Given the U.S. Supreme Court's decision in *Missouri v. McNeely*, we conclude that the natural dissipation of THC from Byars' blood did not, standing alone, create exigent circumstances justifying a warrantless blood draw. We further conclude that NRS 484C.160(7) is unconstitutional because it permits officers to use force to take a suspect's blood without a warrant, valid consent, or another exception to the warrant requirement. Nevertheless, we conclude that Trooper Murwin obtained the evidence in good faith, thus the evidence should not be excluded.

We conclude that the district court erred by merging the sentence for being an unlawful user in possession of a firearm with the sentence for felon in possession of a firearm but not merging the underlying convictions. Accordingly, we reverse the portion of the judgment of conviction finding Byars guilty of being an unlawful user in

possession of a firearm and remand for the district court to correct the judgment of conviction. We affirm Byars' conviction in all other respects.

_____, J.
Parraguirre

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A